## HUMPHREY *v.* SAGOUSPE

Nos. 2732, 2744

April 5, 1927.                                254 P. 1074.

1. SALES—BURDEN WAS ON BUYER CLAIMING DAMAGES TO PROVE SELLER'S REFUSAL TO DELIVER SHEEP ON DUE DEMAND.

   Burden of proof was on buyer claiming breach of contract for sale of sheep to prove seller's refusal to deliver them upon demand duly made.

2. SALES—BUYER OF SHEEP COULD NOT RECOVER DAMAGES FOR LOSS OF RESALE, WHERE SELLER PERFORMED CONTRACT AND BUYER REFUSED TO ACCEPT SHEEP.

   Buyer of sheep was not entitled to damages resulting from loss of resale at higher price, where court on sufficient evidence found that seller had performed all conditions of contract and buyer refused to accept sheep.

3. SALES—SELLER OF SHEEP, WRONGFULLY REFUSED BY BUYER, MAY RECOVER LOSS AND EXPENSE ON RESALE.

   Seller of sheep may resell them, where original buyer wrongfully refuses to accept them, and recover loss and expenses of resale, the right to such damages not being dependent on passing of title from seller to buyer under uniform sales act, secs. 51–54, 60 (Stats. 1915, c. 159), providing that seller's remedies upon resale shall be coextensive with rights where property has passed to buyer.

4. SALES—SELLER COULD NOT RECOVER FOR SHEEP DYING AFTER BUYER'S DEFAULT, WHERE IT COULD NOT BE DETERMINED WHETHER BUYER WOULD HAVE TAKEN SHEEP THAT DIED.

   Seller of sheep could not recover under uniform sales act, sec. 22, subd. (b) (Stats. 1915, c. 159), providing that where delivery has been delayed goods are at risk of party in default, for death of seven sheep occurring in interval between buyer's default and resale; there being no means of determining whether buyer would have taken sheep which died.

5. COSTS—DEFENDANT'S COST BILL SHOULD BE STRICKEN, WHERE PLAINTIFF RECOVERS MORE THAN $300.

   Plaintiff's motion to strike defendant's cost bill should be sustained, where plaintiff recovers more than $300, under Rev.

Laws, 5377, providing that plaintiff shall be allowed costs in action for money where he recovers $300 or more.

6. SALES—SELLER CANNOT RETAIN BALANCE OF DEFAULTING BUYER'S DEPOSIT REMAINING AFTER RESALE EXPENSE IS DEDUCTED.

Uniform sales act, sec. 60 (Stats. 1915, c. 159), providing that seller shall not be liable to defaulting buyer upon the contract or for any profit made by resale, but may recover from buyer damages for loss occasioned by the breach, does not authorize seller to retain balance of initial installment of purchase price after deducting the expenses of care and resale, as such retention would effect a forfeiture.

7. SALES—SELLER WAIVES OTHER REMEDIES ON CONTRACT BY RESELLING GOODS AFTER BUYER'S DEFAULT.

Seller electing to pursue remedy of resale of goods after buyer's default waives all other remedies he may have on contract.

C. J.–CYC. REFERENCES

COSTS—15 C. J. sec. 46, p. 44, n. 45.

SALES—35 Cyc. p. 251, n. 70; p. 296, n. 59; p. 520, n. 16; p. 521, n. 17; p. 522. n. 18, 19, 20, 21, 22; p. 526, n. 59 (new); p. 598. n. 90; p. 599, n. 99; p. 606, n. 81 (new); p. 628, n. 64.

APPEAL from Eighth Judicial District Court, Churchill County; *Clark J. Guild,* Judge.

Action by J. B. Humphrey against J. P. Sagouspe and another, copartners, in which defendants filed a counterclaim. From the judgment, both parties appeal. Appeals consolidated. **Modified and affirmed. Rehearing denied.**

*A. L. Haight,* for Sagouspe, et al.:

Though buyer has not received delivery and bargain is not conditional sale, he cannot recover portion of price paid even if seller thereby obtains undeserved profit. Party who partly performs and refuses to proceed to ultimate conclusion—other party being ready to fulfill his stipulations—will not be permitted to recover back what he has advanced or value of what he has done. Williston, Sales, sec. 599j, p. 1502; 39 Cyc. 605; Rayfield v. Van Meter, 52 P. 666.

It is contrary to public policy to permit one to maintain action who has made part performance, but stops short of completion of contract. Neis v. O'Brien, 41 P. 59; Whitherow v. Whitherow, 16 Ohio, 238; Hapgood v. Shaw, 105 Mass. 276.

Ashbrook v. Hite, 75 Am. Dec. 468 is on all fours with present case; it even involved contract for sale of sheep. Court refused to order return to buyer of amount paid upon execution of contract and said it would be alarming doctrine to hold that plaintiff might violate contract and make his own infraction basis of action for money had and received. Every man who makes bad bargain would claim same right. Subsequent sale by defendant does not alter case. Plaintiffs had renounced contract. Why should he not sell?

Counsel cites no principle of law to support his claim for refund, but accuses us of change of front. His citations on election of remedies are not even remotely connected with facts of case, but apply to actions by vendor to recover contract price from vendee in event of breach by latter, etc.

Where buyer is in default unreasonable time, unpaid seller, having right of lien or stoppage in transitu, may resell and is not liable for any profit, but may recover for loss occasioned by breach. Uniform Sales Act, sec. 60. This disposes of any question of election of remedies.

*Wm. M. Kearney,* for Humphrey:

Cross appeal is taken on judgment roll alone. Only question that can be raised is whether there is error in it. After limiting cross appeal to single point that judgment is contrary to findings, we find defendants attempting to change front and set forth statement of facts which are not included in this appeal. Findings that defendants exercised their right to resell follow allegations of counterclaim and even attempt to follow wording of subd. 5, sec. 60 of uniform sales act, 3 Rev. Laws, p. 3045. Compare this with statement in cross appeal that defendants were unable to resell property until, etc.

Appeal disposes of itself when counterclaim is read in light of secs. 51–60 of sales act. Defendants elected their remedy as they saw it, asserted right to resell for account of plaintiff, and specialized damages. Court

found they were not damaged except for some small items, and disallowed other claims.. They cannot now be permitted to retain $1,000 initial payment. Wood v. American Grocery Co., 114 Atl. 756.

Great weight of authority is that if vendor elects to resell where buyer refuses to proceed and is in default, he may recover only contract price plus reasonable expense pending resale. House v. Babcock, 17 N. Y. Sup. 640; Smith v. Bloom, 141 NW. 32; Slaughter v. Marlow, 31 P. 547; Coffman v. Hampton, 37 Am. Dec. 511; 29 A. L. R. 63.

Counsel quote Williston on Sales, par. 599j, but omit latter part which says that equity requires accounting for what was received by seller in excess of damage suffered. On page 1454, same author says that character of breach cannot change nature of contract, and damage must be what injured party suffered through failure of defendant to perform at time agreed to. Cost of performance must be deducted from contract price.

Having tied themselves to theory of resale, defendants cannot recover more than contract price and expense of care, hence cannot retain initial payment. McDaniel v. Chiaramont, 122 P. 33.

## OPINION

By the Court, DUCKER, J.:

By order of court the above-entitled cases were, on the hearing of the appeals, consolidated, and for convenience the parties will be referred to as designated in the court below.

Plaintiff brought this action against the defendants for a breach of contract, alleging in his complaint, inter alia, that they entered into a contract with him at Fallon, Nevada, on the 8th day of September, 1924, by which they sold and agreed to deliver to him on or before October 1, 1924, 1,200 head of ewe sheep at $7.50 per head, or a total price of $9,000, 800 head of said sheep to be 4 years of age, and 400 head to be 5 years of age; that defendants agreed that plaintiff was to

have the right to pick the number agreed upon out of a band of defendants' sheep totaling about 1,500; that in consideration of said agreement and for the purpose of making the initial purchase price of the sheep agreed upon the plaintiff paid to the defendants on September 8, 1924, the sum of $1,000, and it was mutually agreed that the balance of the purchase price, to wit, $8,000, was to be paid upon the delivery of the sheep to plaintiff. It is alleged that prior to the 1st day of. October, 1924, the plaintiff, relying upon the contract, entered into a contract for the sale of said sheep to third parties at the price of $9 per head, or a total of $10,000, and was prevented from performing the same by reason of the failure of the defendants to deliver the said sheep to plaintiff.

It is alleged that prior to the 1st day of October, 1924, plaintiff made a demand upon defendants for the delivery of said sheep, and upon their failure to deliver made a demand for the return of said $1,000, and also made a demand for the sum of $1,800 alleged as damages for the breach of said contract; that defendants refused to pay any part of said sum so demanded. Judgment is prayed for in the sum of $2,800 and costs of suit.

The answer contains certain denials of the allegations of the complaint. It is also alleged therein that at all times mentioned in the complaint and until the 20th of October, 1924, the defendants were ready and willing to comply with the contract on their part, and during that period made numerous and repeated efforts to deliver said sheep, but the plaintiff refused to accept the same and wholly repudiated the contract; that on the 20th day of October plaintiff was in default of the sale price, and on that date defendants exercised their right to resell said sheep and did resell the same and received therefor the sum of $8,947.50.

By way of counterclaim defendants allege certain items of expense incurred in connection with the sale and keeping of said sheep from October 1 to October 20,. in the loss of several thereof by death, and damages in being deprived of the use of $8,000, which plaintiff should by the terms of the contract have paid on October

1, 1924, from the last-named date until October 20, 1924. It is also alleged in the counterclaim that certain valuable services were performed by defendants for plaintiff in and about finding another purchaser for said sheep. The answer concludes with a prayer that defendants have judgment against plaintiff for the sum of $807.78 special damages and $1,000 general damages.

The case was tried before the court sitting without a jury. Judgment was rendered that defendants recover from plaintiff the sum of $390.94, together with costs and disbursements in the sum of $146.20, and that the defendants pay to plaintiff the balance remaining of the sum of $1,000 after deducting therefrom the damages awarded to the defendants, and their costs and disbursements.

The plaintiff and defendants have appealed, the former from that part of the judgment which fails to award to him the remaining part of the initial payment of $1,000 on the contract, and also from that part which fails to award to plaintiff $1,800 damages, and from the order denying plaintiff's motion for a new trial, and the latter from that portion of the judgment which requires them to pay to plaintiff the balance remaining of the initial payment of $1,000 on the contract.

We will consider plaintiff's appeal first. The contract alleged in the answer was introduced as evidence by plaintiff, and reads as follows:

"J. B. Humphrey.  28.

"Fallon, Sept. 8, 1924.

"Total amount, $1,000.00.

"Name: J. P. Sagouspe.

"For a pick of 1,200 ewes out of about 1,500 at $7.50 per head, ages to be 800 at 4 years old and 400 at 5 years old, and 300 acres of feed and the undersigned to pay for care until Oct. 1, 1924. Received draft No. 28 in payment.                    [Signed]   J. P. Sagouspe."

Draft No. 28 mentioned in the contract was for the sum of $1,000 and was received by the defendant Sagouspe at the time of the execution of the contract as the initial payment thereon. Defendants received the

money on the draft. The trial court found among other facts the following, to wit:

"That the defendants duly performed all of the conditions of the contract and were at all times until and including the 20th day of October, 1924, ready, able, and willing to deliver said property to the plaintiff and tendered the same to plaintiff, but that the plaintiff at all times without cause or reason therefor refused to accept said sheep or to pay for the same pursuant to said agreement, and the plaintiff wholly repudiated said agreement and denied any liability thereunder; that the sheep which defendants were ready, able, and willing to deliver to the plaintiff in accordance with the terms of said contract, and of which they tendered delivery in accordance with the terms of said contract, were in all respects of the kind, age, and quality mentioned in said contract, and as represented to the plaintiff by the defendants to be."

There is substantial evidence in the record tending to show that defendants tendered to plaintiff the delivery of the required number of sheep of the ages and sex mentioned in the contract. This evidence is furnished by defendant Sagouspe, his copartner, Cornell, and Mr. Arranjo, who afterwards purchased the four and five year old sheep from the defendants. Plaintiff concedes that he is bound by the finding of the trial court in this regard. But he contends that the defendants breached the contract in two particulars: First, they refused to deliver the sheep on the premises of the defendant near Fallon; second, they refused the plaintiff the contractual right to select the sheep from a band of 1,500. There is no merit in the first contention. It is not alleged in the complaint nor does it appear from the evidence that it was the understanding of the parties that the sheep were to be delivered at a particular place. If, however, as plaintiff contends, the allegation in the defendants' counterclaim that the delivery of the sheep in question was to be made upon the premises of defendants is to be given the effect that such was the understanding of the parties, it was incumbent on the plaintiff

to have proved that the sheep were not tendered for delivery on defendants' premises before he can claim a breach of the contract in this regard. It is admitted that the sheep were on defendants' premises when plaintiff's agent, Stoddard, first inspected them after the execution of the contract, with the view of receiving them, and it does not appear that the field near Stillwater where Stoddard and Frandsen last inspected them was not a part of defendants' premises.

1. As to the second contention, that defendants refused plaintiff the right to select the sheep, we think this was resolved against him by the judgment of the court. The right of plaintiff to pick the sheep was a part of the contract, and the court could not have found for defendants without first finding as a fact that plaintiff was accorded this privilege. The trial court found, as more fully stated above, "that the defendants duly performed all of the conditions of the contract and were at all times until and including the 20th day of October, 1924, ready, able, and willing to deliver said property to the plaintiff and tendered the same to plaintiff," etc. The evidence is conflicting on this phase of the case, but we think that there was sufficient evidence from which the trial court could legitimately conclude that plaintiff's agents were afforded a reasonable opportunity both at the ranch and later at the field near Stillwater to pick the sheep according to the contract. The burden of proof was on the plaintiff.

It would serve no useful purpose to detail the evidence, and we mention it only in a very general way. The contract was executed by plaintiff's agent, Stoddard, and Sagouspe, one of the defendants, in Fallon, on September 8, 1924. Subsequently and prior to October 1, 1924, Stoddard agreed to sell the sheep to Messrs. Fallon and Blackwell for $9 per head, and in company with them went to Sagouspe's ranch near Fallon, where the sheep were in corrals, and examined the mouths of a number of the sheep for the purpose of ascertaining their ages. Shortly afterward Stoddard and Mr.

Frandsen, a sheepman of considerable experience, who had been requested by plaintiff to select the sheep, went with the defendant Sagouspe and his wife to a field near Stillwater where the sheep then were. Stoddard and Blackwell testified that Sagouspe said at the ranch on the first occasion that he would not permit them to cut out any more than 25. But there is testimony which tends to show and from which the trial court had a right to conclude that Stoddard's offer to pick the sheep was coupled with the condition that he was going to select a less number than specified in the contract. Had Stoddard or Frandsen offered unconditionally to pick the sheep and had been refused permission to do so by Sagouspe, there would have been a clear breach of the contract. But he was under no obligation to deliver a less number than specified in the contract and had a right to object to the selection on any such assumption. Neither was he under any obligation to submit to the judgment of Mr. Casalet or other disinterested parties in the selection. This duty was imposed on plaintiff or his agents, and defendants' duty was to deliver the 1,200 sheep, when so selected, upon the payment of the balance of the purchase price.

It is clear from the testimony of Mr. Stoddard, Mr. Blackwell, Mr. Frandsen, and Mr. Sagouspe and Mr. Casalet that the three former gentlemen were of the opinion that 1,200 sheep of the ages specified in the contract were not in the band. It is established fact by the uncontradicted testimony of Cornell that plaintiff told him that he would not think of taking over 50 per cent of the sheep. This conclusion must have been based on information furnished by his agents, Frandsen and Stoddard. Stress is placed by counsel for plaintiff on the transaction at the field near Stillwater, and it is contended that Sagouspe's refusal to take the sheep to the corrals at the ranch so as to enable Frandsen to pick them was a breach of the contract. According to the testimony of the defendants, which the trial court accepted as preponderating, there were 1,236 sheep at

the field which, when examined by Cornell after his conversation with plaintiff, he found to be, with one exception, of the ages specified in the contract.

Sagouspe refused to take them to the corral, a distance of seven miles, he said, after Frandsen had told him he might throw out 300 of them. Frandsen testified as above, stated that he told Sagouspe there might be 150 or might be 300 at least to go out. Here, as at the ranch on the former occasion, the trial court could have concluded that there was no unconditional offer to pick the sheep to be delivered under the terms of the contract if Sagouspe would take them to the corrals. As to whether the latter refused to permit them to pick the sheep at the field, the evidence is in conflict, but, as Sagouspe's testimony supports the court's finding, it cannot be disturbed. He said he told them: "Here are the sheep," and I says, "I will corner them out in this corner, two ditches running in a square where the camp is, with lots of tule all around. I will put them in this corner. I will catch as many as you want until you are satisfied." Frandsen says, "No; I want them in a corral." And again, the witness said: "I did. I offer myself and my herder to catch as many as he want right in there. He refuse."

The contract was not breached by Sagouspe's refusal to drive the sheep seven miles to a corral, firstly, because there was no genuine offer to pick the 1,200 sheep covered by the contract if taken to the corral; and, secondly, because there is nothing in the pleadings or in the contract to the effect that it was the understanding of the parties that the sheep were to be picked out in a corral. While the task could probably have been accomplished with less difficulty at a corral designed for that purpose, still, it can be inferred from the testimony of Sagouspe and Cornell that it would not have been impracticable to have done it at the field in the corner where the former said the ditches formed a square. Cornell said the place was a "kind of a corral"; that they counted the sheep there and caught and examined the mouths of about 100. On the whole we are satisfied, as previously stated, that the evidence is sufficient

to bear the effect given it by the trial court in finding that defendants duly performed all the conditions of the contract. As in our opinion the question is one of whether the evidence is sufficient to sustain the findings of the court, it is not necessary for us to review the cases cited by plaintiff.

2. There was no error in the action of the trial court in refusing plaintiff's proposed finding on this phase of the case. The court having found on sufficient evidence to the effect that defendants duly performed all of the conditions of the contract and that at all times without cause or reason thereafter plaintiff refused to accept said sheep, it follows that there could have been no error in its failing to award plaintiff any part of the $1,800 claimed in the complaint as damages sustained by loss of the resale of the sheep, or in refusing plaintiff's proposed findings in this regard.

3. It is urged that defendants were not entitled to recover on their counterclaim for any damages alleged to have been sustained by reason of plaintiff's alleged default on the contract in connection with the care and keeping of said sheep from October 1, 1924, to their resale on October 20, 1924, and in connection with the resale, for the reason that title to sheep had not passed to plaintiff. The right to recover damages in such a case is not dependent upon the passing of title from the seller to the buyer. Damages may be recovered in a proper case irrespective of such contingency. The great weight of authority bears out this statement of the rule in 35 Cyc. pp. 520, 521:

"In the United States the rule is well settled that where the goods are in his possession the seller may, without committing a breach of the contract, resell the goods if the original buyer refuses without justifiable cause to receive and pay for them, and may recover the loss sustained in the difference between the contract price and the price received on resale, and the expenses of making the sale, and in addition the cost of storage, interest, and in allowance for his time as agent in reselling. In making such resale the seller acts as agent of the buyer, but not in such a literal sense as to confer on

the buyer any title or interest in the property, and the seller cannot as agent of the buyer purchase additional goods to induce the sale of the first lot and charge the buyer with the loss sustained on the whole."

Mr. Williston, in discussing the question of the seller's right of resale where the property in the goods had previously passed to the buyer, observes: "The seller has at least as great rights if the resale is made before the transfer of the property." "Accordingly," he says, "in the discussion by the courts of what is necessary for a proper resale before the transfer, no distinction generally seems to be observed between resale before the transfer of the property and after, and it seems there is no necessity of making such distinction, except in regard to the time when the resale must be made." 2 Williston on Sales (7th ed.), sec. 546, p. 1370.

However, under the circumstances of this case, defendants' right to resell the property, notwithstanding title had not passed to plaintiff, and recover damages for any loss sustained because of the breach of the contract (or the sale) is found in the uniform sales act of this state (Stats. 1915, c. 159). By section 51 of said act it is provided that:

"If the neglect or refusal of the buyer to take delivery amounts to a repudiation or breach of the entire contract, the seller shall have the rights against the goods and on the contract hereinafter provided in favor of the seller when the buyer is in default."

An unpaid seller of goods is deemed to be such within the meaning of the act when the whole of the price has not been paid or tendered. Section 52. By the provisions of section 53, an unpaid seller, whether title has passed to the buyer or not, is given a right of resale as limited by the act, and one from whom title has passed is given a lien on the goods or right to retain them for the price while he is in possession of them. Paragraph 2 of said section 53 provides:

"Where the property in goods has not passed to the buyer, the unpaid seller has, in addition to his other remedies, a right of withholding delivery similar to and coextensive with his rights of lien and stoppage in

transitu where the property has passed to the buyer."

By paragraph 1 of section 54 the right of lien may be exercised (a) where the goods have been sold without any stipulation as to credit; (b) where the goods have been sold on credit, but the term of credit has expired; (c) where the buyer becomes insolvent.

Section 60 in part provides:

"(1) Where the goods are of a perishable nature, or where the seller expressly reserves the right of resale in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having a right of lien or having stopped the goods in transitu may resell the goods. He shall not thereafter be liable to the original buyer upon the contract to sell or the sale or for any profit made by such resale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale."

4. A reference to these provisions of the uniform sales act shows that plaintiff's contention that because the contract was executory defendants were without right to resell and recover for damages sustained is untenable. The plaintiff was in default after October 1, 1924. On October 20, 1924, defendants sold the 1,200 sheep to Arranjo and received the contract price; consequently no damage was sustained in this respect. No question is made by plaintiff that the time intervening between the default and the resale was not an "unreasonable time" within the meaning of section 60 of the sales act. The $390.94 awarded defendants consists of the following items, namely, for damages actually incurred by defendants in caring for and keeping the sheep in question from the 1st day of October, 1924, to the 20th day of October, 1924, $125; for the services of a herder, $86.67; for the services of a camp tender, $66.67; for the loss of 7 sheep at the value of $7.50 per head, $52.50; for trouble and expense in securing another purchaser, $60. The evidence discloses that such damages were actually sustained by the defendants, and they were recoverable by reason of plaintiff's neglect or refusal to take delivery of the sheep, with the

exception of the sum allowed for the loss of 7 sheep. The loss of these sheep was certainly not caused directly or indirectly by plaintiff's failure to take delivery, and it appears that there were more than 1,200 sheep of the ages specified in defendants' band. They were able after the loss of 7 head to sell 1,200 to Arranjo. Counsel for defendants, in contending for this item of damages, relies upon subdivision (b) of section 22 of the uniform sales act, which reads:

"Where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have accrued but for such default."

This provision does not help defendants. As there were more than 1,200 sheep of the ages specified in the band, it could not be established as a matter of fact that plaintiff, if he had exercised his right to select the sheep, would have selected these seven sheep. It could not be established that these particular sheep were, after default, at the risk of the seller as contemplated by the statute. Consequently no basis can be found in the evidence to warrant the court in concluding that plaintiff was liable for their loss. The objection to the evidence offered on this phase of damages should have been sustained.

Plaintiff has assigned error in the rulings of the trial court in other respects concerning the overruling of the demurrer to defendant's counterclaim and the admission and rejection of evidence, but we find no merit in these objections.

5. Plaintiff's motion to strike defendants' cost bill should have been sustained. He was the prevailing party in the court below and recovered more than $300. Consequently he was entitled to his costs in the court below under section 5377 of the Revised Laws of Nevada. Counsel for defendants concede this, his contention in this regard being that defendants should have been the prevailing party in the court below, and that they expect ultimately to recover their costs as such by the judgment of this court on their appeal. We will now consider defendants' appeal.

6, 7. The sole question on this appeal is whether the trial court could award plaintiff any portion of the $1,000 paid on the purchase price of the sheep. Defendants contend that such recovery was not authorized and that the findings to the effect as previously stated, that defendants performed all the conditions of the contract and that plaintiff refused to take delivery of the sheep, do not support that part of the judgment. They rely upon authorities cited and principally upon subdivision 1 of section 60 of the uniform sales act previously quoted, and argue that this provision giving the seller the right to resell the goods also entitled him in case of resale to retain such sum as may have been paid on the purchase price by the original buyer; that the clause in such provision which reads, "he shall not thereafter be liable to the original buyer upon the contract to sell or the sale or for any profit made by such resale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale," relieves him from all liability, including the return of money paid on the contract. We do not so construe the provision. As we view it the clause merely absolves a seller, who, on default of the buyer, has elected to resell, from damages and from liability to the buyer for profits on the resale and affords a remedy by which he can be made whole for any damages he may have sustained by reason of the breach of the contract or in making the resale. It does not contemplate a forfeiture in addition to full compensation. The law abhors a forfeiture, and one will not be presumed in the absence of a clear provision. Defendants, as will be seen from their counterclaim, have elected to pursue the remedy of resale as afforded by the sales act and are limited by the act to recover from plaintiff only such damages as may have been actually occasioned by the breach of the contract. By pursuing this remedy he waived all other remedies he may have had on the contract.

The cases cited by counsel for defendants wherein it was held that a buyer in default could not recover money advanced on the contract are not from states which have adopted the uniform sales act, nor are they on facts

analogous to the instant case, to wit, a seller who, on resale, has received the full contract price, and damages to the extent of saving him from incidental loss attendant on such resale. The rule he contends for has been followed in conditional sales, but, as remarked by Mr. Williston:

"To allow him (the seller) not only to reclaim the goods and resell them as his own, but also to retain part payment made by the buyer to an extent which more than reimburses him, obviously imposes a forfeiture on the buyer." 2 Williston on Sales, p. 1381.

And again, the author, in discussing the question of recovery by a buyer in default after paying an installment of the price, says:

"And so far as principles established in courts of law are concerned, it may be said 'that the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.' But as indicated in the discussion in relation to conditional sales, *the application of this principle may involve serious forfeiture, and the application of equitable principles should require, where this is clearly established, an accounting for the excess of what was received by the seller in excess of the damage which he suffered.*" (The italics are ours.) 2 Williston on Sales, p. 1502.

As indicated in the note following this paragraph, this conclusion was reached in Sabas v. Gregory, 91 Conn. 26, 98 A. 293. See, also, Daniels v. Morris, 65 Or. 289, 130 P. 397, 132 P. 958.

By the express terms of the uniform sales act, sec. 60, the seller who has exercised his right of resale is not liable for any profit made thereon, but we find nothing to indicate that it was intended that he should also, after fully reimbursing himself, retain all moneys paid on the contract.

The appeal of defendants is therefore without merit,

and it is ordered that the judgment of the lower court, after deducting therefrom the sum of $52.50 and striking defendants' cost bill, be affirmed as to both appeals.

### ON PETITION FOR REHEARING

July 19, 1927.

*Per Curiam:*

Rehearing denied.