TOWN OF EUREKA, AN UNINCORPORATED TOWN, APPELLANT, v. THE OFFICE OF THE STATE ENGINEER OF THE STATE OF NEVADA, DIVISION OF WATER RESOURCES, PETER G. MORROS, STATE ENGINEER, RESPONDENT.

No. 21908

February 20, 1992 826 P.2d 948

*Allison, MacKenzie, Hartman, Soumbeniotis & Russell* and *Dan Saxon* and *Karen Peterson,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Margaret A. Twedt,* Deputy Attorney General, Carson City, for Respondent.

*Woodburn, Wedge & Jeppson* and *Gordon H. DePaoli,* Reno, for Amicus Curiae Sierra Pacific Power Company.

## OPINION

*Per Curiam:*

During the past few years, the town of Eureka (the Town) has undergone a decline in the yield of water from its springs and wells. In January, 1988, because the Town's need for municipal water had increased, Eureka County purchased water rights from the Farmers Home Administration and drilled test wells. One of the test wells indicated enough water was available to satisfy the Town's needs. In July, 1989, Eureka County transferred the water rights to the Town.

In January, 1989,[1] the Town filed an Application for Permission to Change the Point of Diversion, Place of Use and Manner of Use, requesting approval to use another well which was less

---

[1] The record reflects that the Town made its application for diversion prior to its ownership of those same rights. The question naturally arises as to how the Town could make an application with respect to rights it did not have.

degraded to minimize the impact on the groundwater table in Diamond Valley. Two residents of Eureka County protested the application, claiming that the purchased water rights had been forfeited by a failure to use for five consecutive years, 1983-1988. In July, 1989, the State Engineer held a public hearing regarding the application and concluded that only 200.0 acre-feet of water had beneficial use in 1984, and no use had occurred during the other four years. He approved the application as to 200.0 acre-feet annually, but ruled that the Town's predecessor had forfeited the remaining 440.0 acre-feet of water because of non-use for a period of five consecutive years.

Later in July, 1989, the Town requested that the State Engineer grant a diversion rate of at least 1.78 c.f.s. because of the design of the Town's pumping system. In August, 1989, the State Engineer ruled that the protests to the granting of the application were upheld in part and overruled in part. The State Engineer declared 440.0 acre-feet of water rights forfeited and also overruled the protests to the granting of the application to the extent that the application was approved in the amount of a diversion rate of 1.78 c.f.s., not to exceed an annual duty of 200.0 acre-feet. The State Engineer also held that the approval would not impair existing rights or be detrimental to the public interest.

In August, 1989, the Town filed a petition for judicial review pursuant to NRS 533.450, arguing that the State Engineer erred in forfeiting that portion of the Town's water rights. In January, 1991, the district court affirmed the State Engineer's decision, finding that Nevada's forfeiture and abandonment statute, NRS 534.090, was constitutional and could be applied retroactively to forfeit the Town's water rights. We conclude that the statute is constitutional, but we reverse on the grounds that the Town's resumption of substantial use "cures" the forfeiture.

NRS 533.450(1) provides that a party aggrieved by any order or decision of the State Engineer may have the order reviewed on appeal. The decision of the State Engineer shall be presumed correct, and the party challenging the decision will have the burden of proving error. NRS 533.450(9). With questions of fact, the reviewing court must limit itself to a determination of whether substantial evidence in the record supports the State Engineer's decision. Revert v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979). The district court is free to decide purely legal questions, however, without deference to the agency's decision. Jones v. Rosner, 102 Nev. 215, 217, 719 P.2d 805, 806 (1986). Accordingly, the reviewing court may undertake independent review of the construction of a statute. Nevada Emp. Sec. Dep't v. Capri Resorts, 104 Nev. 527, 528, 763 P.2d 50, 51 (1988). While the State Engineer's interpretation of a statute is persuasive, it is not

controlling. State v. State Engineer, 104 Nev. 709, 713, 766 P.2d 263, 266 (1988).

The Town argues that the State Engineer erred as a matter of law in retroactive application of NRS 534.090, asserting that at the time its water rights vested, the sole means by which a party could lose such rights was by abandonment. The Town also argues that because it has put these water rights to beneficial use since the time of purchase, it has not abandoned them and the district court's decision to uphold the forfeiture was in error. The State responds that because NRS 534.090(1) mandates the forfeiture of any portion of water rights not used during five consecutive years, the district court's decision should be affirmed.

Nevada enacted its first comprehensive water law in 1913. N.C.L. §§ 7890-8254. Section 7891 provided that, subject to existing rights, all water may be appropriated for beneficial use. Section 7897 declared that if an owner of water rights ever failed to use his or her water for beneficial purposes during five successive years, the State would consider the rights abandoned, and the owner would forfeit the rights. In 1939, the legislature enacted the Conservation and Distribution of Underground Waters Act. N.C.L. §§ 7987-7993. Section 7993.13 allowed appropriation of underground water systems constructed subsequent to the 1913 Water Act.

In 1947 the legislature amended the prior two acts. N.C.L. § 7993.18a, entitled "Forfeiture-Abandonment," provided in part:

> Failure for five successive years on the part of the holder of any right, whether it be an adjudicated right, an unadjudicated right, or permitted right, and further whether such right be initiated after or before the passage of this act, to use beneficially all or any part of the underground water for the purpose for which such right shall be acquired or claimed, *shall work a forfeiture of undetermined rights and an abandonment of determined rights* of the right to the use of such water to the extent of such nonuse. Upon the forfeiture of a right to the use of ground water, such water shall revert to the public and shall be available for further appropriation, subject to existing rights.

(Emphasis added.) Section 7993.18a was renamed NRS 534.090(1). In 1967, NRS 534.090(1) was amended to provide:

> Failure for 5 successive years on the part of the holder of any right, whether it be an adjudicated right, an unadjudicated right, or permitted right, and further whether such right be initiated after or before March 25, 1939, to use beneficially all or any part of the underground water for the purpose for which such right shall be acquired or claimed,

*shall work a forfeiture of both undetermined rights and determined rights* of the right to the use of such water to the extent of such nonuse.

(Emphasis added.) In 1981, NRS 534.090 was further amended to provide that in order to effect a forfeiture, the required five years of non-use had to begin after April 15, 1967. The language of NRS 534.090(1) expresses the legislature's intent that the statute apply retroactively to water rights present on April 15, 1967.[2] When the State proves five successive years of non-use after April 15, 1967, the water reverts to the public.

The constitutionality of NRS 534.090(1) depends on a balance between vested property rights and the police power of the State. Water rights are subject to regulation under the police power as is necessary for the general welfare. *See* V. L. & S. Co. v. District Court, 42 Nev. 1, 171 P. 166 (1918). As the owner of all water in Nevada, the State has the right to prescribe how water may be used. In Re Waters of Manse Spring, 60 Nev. 280, 287, 108 P.2d 311, 315 (1940). However, the protection afforded by the due process clause of the Fourteenth Amendment to the United States Constitution extends to prevent retrospective laws from divesting vested rights. Ettor v. Tacoma, 228 U.S. 148, 155-56 (1913); Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 721-23, 615 P.2d 972, 974 (1980). Therefore, absent clear legislative intent to make a statute retroactive, this court will interpret it as having only a prospective effect. Nevada Power Co. v. Metropolitan Dev. Co., 104 Nev. 684, 686, 765 P.2d 1162, 1163 (1988).

Vested water rights are those already established either through diversion and beneficial use or through a state permit. Application of Filippini, 66 Nev. 17, 22, 202 P.2d 535, 541 (1949). A water right "is regarded and protected as real property." Carson City v. Estate of Lompa, 88 Nev. 541, 542, 501 P.2d 662 (1972). This court has, however, upheld retroactive statutes under due process analysis when the legislative action is a permissible exercise of police power. SIIS v. Surman, 103 Nev. 366, 741 P.2d 1357 (1987); Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 457-58, 530 P.2d 108, 112 (1974).

Sixteen out of nineteen western states have forfeiture statutes applicable to the appropriation of water rights. 1 W. Hutchins, Water Rights in the Nineteen Western States 290-98 (1974).[3]

---

[2]The exceptions in NRS 534.090(2) and (3) do not apply to these facts.

[3]Although Colorado, Hawaii, and Montana have no statutory forfeiture provisions, under the abandonment statutes in Colorado and Montana, a ten-

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Courts considering this issue have upheld the retroactive application of their forfeiture statutes. *See, e.g.,* In re Birdwood Irrigation Dist., Water Division No. 1-A, 46 N.W.2d 884, 888 (Neb. 1951) (court upheld retroactive law as an implied condition subsequent to the limited water rights originally granted by the state); Texas Water Rights Commission v. Wright, 464 S.W.2d 642, 648-50 (Tex. 1971) (retroactive application of forfeiture statute held constitutional because water permits are limited rights).

▆▆▆▆▆▆▆▆▆

A statute enacted after a forfeiture statute cannot be applied retroactively to impair vested water rights when, prior to the enactment of the forfeiture statute, those rights could have been lost only through abandonment. In Re Waters of Manse Spring, 60 Nev. 280, 289, 108 P.2d 311, 315 (1940). The district court distinguished *Manse Spring* from the case at bar because *Manse Spring* concerned the non-use of pre-statutory surface water rights, while this case involves permitted groundwater rights. Also, under the 1913 water law discussed in *Manse Spring,* the legislature specifically included a provision that the act would not impair vested rights created prior to 1913, while current Nevada water law lacks a similar provision.[4] Finally, contrary to the 1913 water law, the legislature has affirmatively stated that the forfeiture provision enacted in 1967 applies to all groundwater rights, even those in existence at the time of enactment. We agree with the district court that the legislature's affirmative statement that the law shall be retroactive is constitutional. We conclude that forfeiture applies when the State proves non-use over the statutory period, unless resumed use has "cured" or resuscitated the defect in the water rights.

Jurisdictions are divided on whether, after the statutory period of non-use, the resumed use of water cures the forfeiture and revitalizes the right. Oregon and South Dakota strictly apply the forfeiture laws. *See* Bausch v. Myers, 541 P.2d 817, 819 (Or. 1975) (en banc) (five years of non-use conclusively works an abandonment and loss of water rights where the statute provides for a conclusive presumption of abandonment). *See also* Rencken v. Young, 711 P.2d 954, 958-59 (Or. 1985) (although *Bausch* court used the term "abandonment," *Rencken* court clarified relevant statute as a forfeiture statute); In re Cancel. of Stabio Ditch Water Right, 417 N.W.2d 391, 395 (S.D. 1987) (three-year forfeiture statutes did not allow revival of water rights).

---

year period of non-use creates a rebuttable presumption of abandonment. Colo. Rev. Stat. § 37-92-402(11) (1990); Mont. Code Ann. § 85-2-404(2) (1989).

[4]*See* NRS Chapter 534.

Idaho and Wyoming, however, provide for amelioration of the harsh effects of a forfeiture where the holder of water rights resumes use after the statutory period of non-use. *See* Carrington v. Crandall, 147 P.2d 1009, 1011 (Idaho 1944) (forfeiture is not effective if, after the statutory period of non-use, the original owner or appropriator resumes use of water prior to a third party's claim of right). Under forfeiture statutes similar to those of Nevada, the Idaho and Wyoming courts have held that reuse of water rights prior to a formal declaration of forfeiture constitutes a "cure" to the forfeiture. *See e.g.,* Application of Boyer, 248 P.2d 540, 544 (Idaho 1952) (an appropriator may resume use any time prior to a third party's claim of right); Sturgeon v. Brooks, 281 P.2d 675, 683 (Wyo. 1955) (forfeiture did not apply where user had recommenced use and claimant brought forfeiture action sixteen years after period of non-use).

The Town argues that this court should interpret NRS 534.090 in accord with the Idaho and Wyoming decisions that interpret similar statutes. We agree. This approach protects vested rights and follows the general rule that statutes should not be construed to work a forfeiture where a forfeiture is not clearly required, NRS 533.085; Humphrey v. Sagouspe, 50 Nev. 157, 171, 254 P. 1074, 1079 (1927). Under the rule we adopt, substantial use of water rights after the statutory period of non-use "cures" claims to forfeiture so long as no claim or proceeding of forfeiture has begun.

Due to the need to protect against the waste of water when it is used solely to protect water rights, permitting a procedure of filing for non-use with the State Engineer may be an alternative procedure the legislature may wish to consider. Also, the status of water rights should be readily determinable from the public record. The legislature, with its fact-finding capabilities, is better qualified than this court to specify the details of such procedures. The legislature may also need to consider whether a partial forfeiture is suitable when the owner's motivation for filing or resumption of use is to protect rights to water that is not otherwise used beneficially.

Because the law disfavors a forfeiture, the State bears the burden of proving, by clear and convincing evidence, a statutory period of non-use. Since the State Engineer did not determine how much use the Town or its predecessors made of the water rights after the period of non-use, and the record contains little evidence on this point, we reverse and remand to the district court for referral to the State Engineer to conduct further pro-

ceedings consistent with this opinion to determine whether the Town "cured" the forfeiture by substantial use of the water after the non-use period.