CONTINENTAL CASUALTY COMPANY, APPELLANT, v. MARY WINSLOW SUMMERFIELD, SPECIAL ADMINISTRATRIX OF THE ESTATE OF LESTER D. SUMMERFIELD, DECEASED, RESPONDENT.

No. 6200

March 9, 1971                                   482 P.2d 308

*Vargas, Bartlett & Dixon,* and *Albert F. Pagni,* of Reno, for Appellant.

*Breen, Young, Whitehead & Hoy,* and *Milos Terzich,* of Reno, for Respondent.

# OPINION

By the Court, COMPTON, D. J.:

Defendant Continental Casualty Company, hereafter for convenience referred to as Insurer, appeals from an adverse trial court judgment. The respondent is the special administratrix of the Estate of Lester D. Summerfield, deceased. The decedent will be hereafter referred to as Insured.

The cause was submitted to the trial judge on a stipulation covering facts agreed upon and the contentions in issue.

Effective July 1, 1962, Insurer issued two policies to Insured. One, denominated a $10,000 Reserve Policy, numbered 27D 0000105, contained a Visiting Nurse Expense clause which read as follows: "The reasonable expense actually incurred by the Insured for the visit of a visiting nurse at the residence of the Insured up to a dollar limit of $6.50 per visit and up to one such visit per day, for which a charge is made by the Public Health Nursing Agency with whom the visiting nurse is accredited." The policy defines "visiting nurse" as follows: " 'Visiting Nurse' means a nurse accredited by the Public Health Nursing Agency located in the community where the Insured resides or is being treated." The policy also contained a $500 annual deductible clause, and covered 75 percent of the excess.

A second, denominated a $5,000 Medical Policy numbered 27E0000105, contained no visiting nurse expense benefits; however, effective April 1, 1965, a Visiting Nurse Expense Rider was added to No. 27E0000105. It defines "Visiting Nurse" in these words: " 'Visiting Nurse' means a nurse accredited by the Public Health Nursing Agency located in the community where the Insured resides or is being treated, *or a nurse employed by a hospital*." (Emphasis added.) This policy and rider were subject to a $100 annual deductible amount, and covered 75 percent of the excess.

Both policies were in full force and effect through November 7, 1966, the date of the death of Insured.

Expenses for nursing services in Insured's home were incurred during the years 1965 and 1966. During this period nurses were employed through the local Washoe County Medical Society of Visiting Nurses, and the Nurses Registry. Two of the nurses were employed through the Visiting Nurses Service and the remainder through the Nurses Registry. The employment through the Visiting Nurses Service was billed through that service. The remainder was billed by the nurse.

The Visiting Nurses Society hires licensed practical nurses and registered nurses on a full time basis, and they render services as such solely between the hours of 8:00 a.m. and 5:00 p.m. daily; however, there is no prohibition against its employees rendering similar services while off duty. The nurses have the same qualifications as licensed practical nurses and registered nurses engaged through the Nurses Registry or private duty nurses. Licensed practical nurses and registered nurses may be employed through the Nurses Registry. It is conceded by Insurer that the terms "visiting nurse," "visiting nurses association" and "nurses registry" are generally unknown in the community to nonmedical persons.

The trial court rendered judgment for the plaintiff, special administratrix, in the sum of $4,037.49, under both policies, together with attorneys fees and costs.

The appellant assigns the following as error:

1. Respondent failed to carry her burden of proving that all the expenses incurred by the insured were such as come within the coverage of each policy.

2. The court erred as a matter of law in the interpretation of each of the insurance contracts.

3. The award of the judgment is not supported by the Findings of Fact and Conclusions of Law.

Assignment No. 3 is wholly without merit since it is conceded that as to each policy an expense was actually incurred for nursing services by the Insured, and we believe that determination of No. 2 will effectively dispose of the question raised in Assignment No. 1.

Insurer lists eight so-called "issues" on appeal. Some are settled by stipulation of facts; the others we believe will be resolved by our consideration of Assignment of error No. 2.

Insurer, in effect, admits that had all nurses been employed through the Visiting Nurses Service and their services billed for by that agency, the plaintiff's claim would be proper. Here, however, as below, Insurer contends that only the nurses hired through the Washoe County Medical Society of Visiting Nurses

comply with the policy requirements. Liability is denied for the visits of any others.

Insurer has stipulated that the terms "visiting nurse," "visiting nurses association" and "nurses registry," are generally unknown in the local community to nonmedical persons, and the trial court so found, but it asserts that this fact is irrelevant and immaterial.

The trial court found the following facts and adopted it as a conclusion of law, i.e.:

"13.    That there is no distinction in fact or in law differentiating between 'visiting nurse,' 'visiting nursing association' and 'nurses registry' in this case, and in this community, and that fairness deems, and the facts require, a finding that the Plaintiff should be paid in the amount guaranteed by the contract."

The determinative issue in the case evolves from this finding and conclusion. We agree with this finding and conclusion and affirm the judgment of the trial court.

Without question, a policy of insurance is a contract, which must be enforced according to its terms, and the burden of proof is upon the claimant. Healey v. Imperial Fire Ins. Co., 5 Nev. 268 (1869). However, as Insurer aptly points out, the object of the interpretation of an insurance policy is to determine the intent of the parties so that the contract may be given effect consistent with the parties' real intent and purpose (citing Home Indemnity Co. v. Desert Palace, Inc., 86 Nev. 234, 468 P.2d 19, 21 (1970)), but this court further said there: "[T]he intention of the parties should control and the terms of the clause should be taken and understood in their plain, ordinary and popular sense. . . . In determining the intent of the parties a court should consider all the salient facts. . . . If . . . there is room for construction or doubt, the benefit of the doubt must be given to the assured." (Citing Richfield Oil Corp. v. Harbor Ins. Co., 85 Nev. 185, 452 P.2d 462 (1969), and Gerhauser v. North British and Merc. Ins. Co., 7 Nev. 174, 185 (1871).)

Insurer contends that there is no room for doubt; that the trial court created the doubt if there be any, and that such terms as "accredited," "visiting nurse" or "nurse employed by a hospital" should be given their literal meaning as set forth in the insurance contracts. With this we cannot agree. When the contracts are considered in the light of stipulated facts, it is obvious that there is a need for construction. A clear disagreement over meaning has arisen, and it does not suffice to say that one party's opinion settled the controversy.

Insurer, who drew the contract, must be presumed to have issued it in the light of Nevada law. In fact, the policy provides that "any provision of this policy which on its effective date is in conflict with the statutes of the state in which the insured resides on such date, is hereby amended to conform to the minimum requirements of such statutes."

Insurer contends that since five of the nurses (of seven) were not employed by the hospital or accredited by the local visiting nurses agency, they were not visiting nurses within the meaning of the insurance contracts, and Insured was not entitled to compensation. It places special significance on the words "visiting nurse," deeming it a special class or category. We do not so interpret it. We view it more as *descriptio personae,* i.e., adjective rather than nominal; a nurse employed to give medical care to the sick in their homes, as distinguished from nurses employed in a hospital or skilled nursing home. Under the policy itself this might be either a registered nurse or a licensed practical nurse.

Nor do we deem the contention that the nurses must be " 'accredited' by the public health nursing agency" to have merit. It is clear that such agency in Nevada has no power to accredit. Webster's Twentieth Century Dictionary (1963 Ed.) defines "accredit" as follows: "To authorize, to give credentials to" or "to confer credit or authority on: to stamp with authority." At the time of the issuance of the policies here considered, and under the provisions of NCL § 4756, et seq. and § 4759, et seq. (1943–1949), now Chap. 632 NRS, sole power and authority to examine and license both registered nurses and practical nurses was lodged in the State Board of Nurse Examiners. Penal sanctions are imposed for failure to comply with the provisions of the statutes. Thus it was legally impossible for the public health agency to qualify the nurses. Further, nurses employed by a hospital were qualified within the policy though not accredited by the public health agency. Under Nevada law, accreditation applies to schools or institutions, not individuals.

As has been conceded by Insurer, the Visiting Nurses Society provided nurses only between the hours of 8:00 a.m. and 5:00 p.m. To interpret the policy as Insurer requests would effectively deprive the Insured of nursing services in the local community for all hours other than 8:00 a.m. to 5:00 p.m. This we will not do. Nowhere in the policies are the duties, hours or responsibilities of the visiting nurses prescribed. The

sole limitation is one visit per day and a maximum of $6.50 per day.

Since, under Nevada law, all nurses must be qualified and licensed prior to becoming visiting nurses, the placement of such power in an unauthorized agency is a nullity. We hold that a proper and liberal construction of the language of the policies requires the words "visiting nurse" to include any registered or licensed practical nurse qualified under Nevada law. Cf. Buske v. Federal Casualty Co., 227 N.W. 239 (Wis. 1929), and Reserve Life Insurance Company v. Marr, 254 F.2d 289, 291 (9th Cir. 1958). Any other construction would render the contracts largely meaningless.

Insurer attacks the judgment on the ground that it is not supported by finding No. 15, which reads:

"15.   That under the facts of the case and the contracts of the parties, the defendant insurance company is obligated to pay at the rate per shift for all registered nurses supplied to the plaintiff and paid for by her regardless of the source of dispatch to the defendant's insured." It contends that the trial court restricted recovery to those services rendered by "registered" nurses only. This attack is without merit. Such error in the findings could have been corrected by timely motion to amend, however, it is obviously a clerical error by reason of its inconsistency with other findings as well as stipulated or conceded evidence, e.g., Insurer conceded it was liable for visits of the two nurses employed through the visiting nurses society who were licensed practical nurses, or as designated L.P.N.

It has been admitted that with the exception of the two nurses initially employed through the visiting nurses society, for whose services the society billed the Insured, all other nurses billed the Insured directly and were paid directly by the Insured. Insurer contends that this was such a violation of the terms of the contract as would relieve it from liability. We do not agree. It appears obvious that such provision for billing and payment is for the protection of the Insurer so as to prevent fraudulent claims, however, no contention is made by Insurer here that it suffered damage or loss by reason of the actual billing and payment. Its sole contention is that such practice violated the terms of the contract. Conceding that it was a variation of the contract we do not feel that it was of sufficient substance to void the Insurer's responsibility.

134

We deem the Insurer's assignments of error to be merely technical and unsupported by the record. Contractual responsibility may not be eroded or shaved away by merely technical contentions when they have no foundation in reality. The policies must be read in the light of salient facts and against the background of the understanding of the local community. Insurer wrote the policy and must shoulder the burden of any ambiguity. The Insured is entitled to have it resolved in his favor.

The judgment below is affirmed.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.