## Saslaff v. The Equitable Life Assurance Society

*Stanley P. Stern*, for plaintiff.
*Michael C. Hemsley*, for defendant.

SPORKIN, *J.*, June 12, 1979—The instant matter had its origin in a complaint in assumpsit filed on August 13, 1976, by Judith Saslaff (Saslaff), against the Equitable Life Assurance Society of the United States (Equitable), under a group medical

insurance policy to recover the sum of $5,507.13 representing medical bills incurred by Saslaff for private duty nursing care following serious personal injuries which she sustained in an accident on March 28, 1976. Upon an appeal from an award by a board of arbitrators entered on February 10, 1977, in favor of Saslaff, the instant matter was assigned to this court sitting without a jury for a trial de novo.

By agreement of counsel, the parties have stipulated to the relevant facts which may be briefly summarized as follows:

Prior to March 28, 1976, Saslaff was employed by Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) which provided coverage for certain medical benefits on behalf of its employes under a group insurance policy No. 6448M (policy) underwritten by Equitable. On March 28, 1976, Saslaff, although no longer employed by Merrill Lynch but nevertheless covered under the policy, was involved in an accident in which she sustained fractures, lacerations, and other injuries.

Following her hospitalization, Saslaff's husband, without consulting Merrill Lynch or Equitable, secured on his wife's behalf the services of private duty licensed practical nurses from Homemaker's Upjohn Company (Homemaker's) upon Homemaker's representation that said licensed practical nurses, as opposed to registered nurses, would provide Saslaff with sufficient medical care at a lesser cost.

Although a copy of the policy, which provides coverage for 80 percent of "charges made by a Registered Nurse for private duty nursing service," is not directly issued to each Merrill Lynch employe, a copy of said policy is made available to the employe

upon request to either the personnel office or to his or her supervisor. Moreover, Merrill Lynch provided Saslaff with a booklet entitled "Your Merrill Lynch Benefits Program," which booklet, in outlining the health insurance plan, lists coverage for "private registered nurses" and advises the employe to keep careful records for "private duty nursing charges indicating the name of the patient, *RN's registry number*, total number of shifts worked, dates and charges per shift." (Emphasis supplied.)[1]

On February 21, 1979, we heard oral argument limited to the narrow question of law that is presently before us—whether or not the bill submitted to Saslaff by Homemaker's for private duty licensed practical nurses falls within the purview of covered charges under the policy as "charges made by a Registered Nurse for private duty nursing service." This legal issue is one of first impression in Pennsylvania. There are no cases in this Commonwealth which we have been able to find by a careful research of the law dealing with the term "registered nurse" as an ambiguous term so as to embrace licensed practical nurses within its meaning.

---

1. It is pertinent to note that said booklet clearly and emphatically informs the employe that its sole function is to explain in nontechnical laymen's language the main features of the benefits provided, and that any conflict between the provisions of the booklet and the terms of the policy must be resolved in favor of the policy which is the governing legal document. The booklet further provides that copies of said policy are available for review at the personnel office and that specific questions relative to the benefits program may be addressed to the employe's supervisor and then, if necessary, to benefits information in the personnel division of the home office.

While it is well settled that any ambiguity in an insurance contract is to be liberally construed in favor of the insured; yet, when the terms of an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and a doubt cannot be created merely to find in favor of the insured: Penn-Air, Inc. v. Indemnity Insurance Company of North America, 439 Pa. 511, 269 A. 2d 19 (1970); Delaware County Construction Company v. Safeguard Insurance Company, 209 Pa. Superior Ct. 502, 228 A. 2d 15 (1967); Burdsall v. Mutual of Omaha Insurance Company, 207 Pa. Superior Ct. 228, 217 A. 2d 789 (1966). The intention of the parties to an insurance contract is paramount and the court must adopt the interpretation which "ascribes the most reasonable, probable, and natural intention" of said parties: Galvin v. Occidental Life Insurance Co. of California, 206 Pa. Superior Ct. 61, 65, 211 A. 2d 120 (1965). In applying these principles to the case at bar, we are convinced that the meaning of the term "Registered Nurse" in the policy provision in question is crystal clear and that Merrill Lynch never intended to extend coverage to its employes for services rendered by licensed practical nurses, which services, by statute, differ significantly from the nature, quality, and scope of the services performed by registered nurses.

The Pennsylvania legislature has mandated that "[a]ny person who holds a license to practice professional nursing in this Commonwealth . . . shall have the right to use the title 'registered nurse' and the abbreviation 'R.N.' No other person shall engage in the practice of professional nursing or use the title 'registered nurse' or the abbreviation 'R.N.'

to indicate that the person using the same is a registered nurse." See the Professional Nursing Law of May 22, 1951, P.L. 317, as amended July 3, 1974, P.L. 432, sec. 3, 63 P.S. §213. Thus, by statute, only a person licensed to practice professional nursing has the right to the title of registered nurse.[2]

Under a separate and distinct legislative act entitled the Practical Nurse Law of March 2, 1956, P.L. (1955) 1211, secs. 1-17, as amended, 63 P.S. §651 et seq., the practice of practical nursing is defined in section 652 as "the performance of selected nursing acts in the care of the ill, injured or infirm under the direction of a *licensed professional nurse*, a licensed physician or a licensed dentist *which do*

---

2. The Practice of Professional Nursing is defined under the Professional Nursing Law, 63 P.S. §212, as "diagnosing and treating human responses to actual or potential health problems through such services as casefinding, health teaching, health counseling, and provision of care supportive to or restorative of life and well-being, and executing medical regimens as prescribed by a licensed physician or dentist. The foregoing shall not be deemed to include acts of medical diagnosis or prescription of medical therapeutic or corrective measures, except as may be authorized by rules and regulations jointly promulgated by the State Board of Medical Education and Licensure and the Board, which rules and regulations shall be implemented by the Board." The terms "diagnosing," "treating," and "human responses" are defined under this same section as follows: "Diagnosing" means that identification of and discrimination between physical and psychosocial signs and symptoms essential to effective execution and management of the nursing regimen. "Treating" means selection and performance of those therapeutic measures essential to the effective execution and management of the nursing regimen, and execution of the prescribed medical regimen. "Human responses" means those signs, symptoms and processes which denote the individual's interaction with an actual or potential health problem.

*not require the specialized skill, judgment and knowledge required in professional nursing.*" (Emphasis supplied.) It is therefore obvious to us that since a licensed practical nurse is only permitted to perform selected nursing acts under the direction of a licensed professional nurse (or physician or dentist) which do not require the specialized skill, judgment and knowledge required in professional nursing, and since only a registered nurse is entitled to practice professional nursing, there is a clear and pronounced statutory distinction between registered and practical nurses.

Furthermore, this statutory distinction is magnified by the regulations promulgated by the State Board of Nurse Examiners under 49 Pa. Code, §§21.12-21.17, wherein the registered nurse only is specifically delegated the responsibilities to (a) administer anesthesia; (b) perform immunizations and skin testing; (c) utilize monitoring, defibrillating, and resuscitating equipment; (d) administer drugs ordered by a licensed doctor of the healing arts in the prescribed dosage; (e) perform veni puncture and administer and withdraw intravenous fluids; (f) perform external cardiac resuscitation and artificial respiration, mouth to mouth.[3]

In addition, the qualifications for the registered nurse are much more stringent than those of the licensed practical nurse as the former must be a graduate from either an associate degree program (normally 2 years), a diploma program (normally 3

---

3. It is to be noted that the said regulations of the State Board of Nurse Examiners also differentiate the general functions of the registered and licensed practical nurses. See 49 Pa. Code §§21.11 and 21.145.

years), or a baccalaureate degree program (normally 4 years) (see 49 Pa. Code §§21.61-21.89), and also pass a written examination in medical nursing, surgical nursing, obstetric nursing, nursing of children, and psychiatric nursing: 49 Pa. Code §21.23. The licensed practical nurse, on the other hand, requires only one year of training and instruction under 63 P.S. §655, and must pass the less difficult State Board Test Pool Examination. See 49 Pa. Code §21.152.

Moreover, although our appellate courts have not as yet been squarely confronted with the novel question now before us, as heretofore indicated, we must give proper and deserved effect to the recent holdings of our sister states of Missouri and Illinois which covered remarkably similar, if not identical, factual settings as encountered by us here. In Moskowitz v. Equitable Life Assurance Society of the United States, 544 S.W. 2d 13 (1976), the Supreme Court of Missouri unanimously held that a provision in a group major medical insurance policy providing coverage for "Charges made for private nursing service by Registered Professional Nurse (R.N.)" when prescribed as necessary by a physician was clear and unambiguous and manifestly did not encompass services performed by private duty licensed practical nurses. It is appropriate to quote the very language expressed by the Missouri court at page 16 in rejecting the plaintiff's argument that the policy was ambiguous since no mention was made whether persons other than registered nurses could perform the covered private nursing services:

"Additionally, he says that since the policy did not state whether persons other than R.N.s could per-

form the covered private nursing services, the policy is ambiguous. We disagree. The language is brief and precise. It says simply that covered medical expenses referred to in the policy include charges by R.N.s for private nursing services when prescribed as necessary by a physician legally licensed to practice medicine or surgery. How could it be stated any more clearly or exactly? When one states that an apple is red, he need not add that it is not green, brown, blue or any other color besides red. He says it all and he says it clearly when he says the apple is red. It wasn't necessary for Equitable to add that coverage would not apply if the private nursing services were performed by a practical nurse. It clearly and positively stated that the policy covered such nursing services when prescribed by the doctor and performed by an R.N. That is what it means. There is no room for any other reasonable interpretation of the language used.

"If it had been the intention to cover private duty nursing in homes, irrespective of whether performed by R.N.s or practical nurses, there would have been no occasion to include language specifying coverage for such services by R.N.s. Instead, the language would have mentioned both kinds of nurses or neither."

Furthermore, in citing the statutory differences between the registered and licensed practical nurses in terms of their qualifications, skill, education, and permissible duties, the court in Moskowitz specifically repudiated two arguments in favor of coverage that have also been espoused by Saslaff in the instant case, to wit, (a) licensed practical nurses were sufficient to provide the medical care needed; (b) Equitable actually profited from the

employment of licensed practical nurses rather than registered nurses since charges for the services of licensed practical nurses are less costly than those of registered nurses.[4]

In Moskowitz, the attending physician directed that "practical nurses are adequate for her nursing care" and he testified that it was not necessary to have a registered nurse to care for Mrs. Moskowitz; whereas, in the instant case, Homemaker's recommended to Saslaff's husband that licensed practical nurses were sufficient to provide the necessary care. Nevertheless, notwithstanding the adequacy of practical nurses in being able to administer nursing care to Saslaff or the fact that the charges for their services were less costly than those of registered nurses, we must be guided, as the court in Moskowitz, by the clear and precise language of the policy wherein Equitable chose to limit its liability to only the more serious and complex cases requiring the specialized and expert skill, knowledge, and judgment of the professional registered nurse and exclude coverage for the more routine, mundane, and less complicated services rendered by the lesser trained and skilled licensed practical nurse.

It is clear to us that if Equitable had intended to provide coverage to Saslaff for services rendered by licensed practical nurses, the pertinent policy provision would have read "charges made by a Registered Nurse or Licensed Practical Nurse for private

---

4. The Missouri Supreme Court also rejected Moskowitz's argument that the employment of licensed practical nurses in lieu of registered nurses (who were then unavailable) constituted substantial performance or compliance with the pertinent policy provision as interpreted by the court.

duty nursing service" or would have mentioned neither type of nurse specifically by name, but would have merely stated "charges made for private duty nursing service." Indeed, it is most unfortunate that Saslaff was injured and required nursing care; yet, as a court of law, we must not let pity or sympathy blind us to the governing principle of law that we must follow as so aptly stated in Moskowitz at page 20:

"'Courts are without authority to rewrite contracts, even insurance contracts, *although it may appear that in some respects they operate harshly or inequitably as to one of the parties*; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they themselves made.'" (Emphasis supplied, citations omitted.)

Nor can we subscribe to Saslaff's contention that Moskowitz is distinguishable from the instant case by the fact that the Moskowitz family was specifically notified by letter that the policy in question covered charges only for registered and not licensed practical nurses.[5]

Our review of the Moskowitz opinion fails to disclose that said notification in Equitable's letter was

---

5. It is to be noted that the circumstances surrounding the said letter involved Equitable's payment to the grandson of Mrs. Moskowitz the sum of $252 for services rendered by practical nurses to his infant son suffering from a neurological problem. A voluntary exception was made by Equitable since efforts to secure the services of registered nurses proved unsuccessful, but Equitable made quite clear in its letter to the Moskowitz family that no further exceptions would be made since the policy coverage was limited to registered nurses.

in any way a controlling factor in the court's holding (or given any consideration whatsoever) which decision, in our view, was based on the clear and unambiguous policy language itself.

Moreover, Saslaff had constructive notice that the policy covered only "charges made by a Registered Nurse for private duty nursing service" since she was aware that a copy of said policy would be made available to her upon request through the Merrill Lynch personnel office or the supervisor; then too, she (Saslaff) had actual notice that coverage was limited to registered nurses throught the booklet she received entitled "Your Merrill Lynch Benefits Program" which listed coverage for "private registered nurses" and advised her to keep records for the "RN's registry number;" and furthermore, she (Saslaff) should have contacted either Merrill Lynch or Equitable (which she failed to do) where doubt existed or to verify whether or not licensed practical nurses would be covered.

And, since Equitable is the defendant insurance carrier in both the Moskowitz case and in the instant lawsuit, and in light of the close similarity between the pertinent policy provisions in Moskowitz (where the term "Registered Professional Nurse" is used) and the case before us (where the phrase "Registered Nurse" is the subject), we cannot help but conclude that Equitable's communication[6] to the Moskowitz family clearly manifests Equitable's policy and intention to provide cover-

6. The aforesaid communication from Equitable to the Moskowitz family read as follows: ". . . The group policy provides for private duty nursing services only when they are prescribed as necessary and requires the special skills and knowledge that only a registered nurse (RN) can perform. An LPN does not possess the same knowledge and skills and

age for registered nurses only and not licensed practical nurses.

Furthermore, our decision here does not rest solely upon the Missouri Supreme Court's holding but also finds support in the case of Rock Island Bank v. Time Insurance Co., 57 Ill. App. 3d 220, 14 Ill. Dec. 719, 372 N.E. 2d 998, 998-99 (1978), where the Illinois Appellate Court held that the provision in a group insurance policy providing coverage for "[p]rivate duty nursing services by graduate registered nurses, who are not immediate members of the Insured's family" was clear and unambiguous and did not emcompass nursing care rendered by licensed practical nurses even though it was difficult, if not impossible, for the plaintiff to have secured the services of a registered nurse. There, the court could not "rule in direct conflict with" nor "ignore" the "very clear limiting" and "very plain" language of the policy.

In noting the distinct statutory difference in Illinois between the "Registered Nurse or Registered Professional Nurse" and the "Practical Nurse or Licensed Practical Nurse," the court in Rock Island Bank refused to adhere to a twenty-year-old New York lower court non-jury case (heavily relied upon here by Saslaff): Kaplan v. New York Life Insurance Co., 19 Misc. 2d 987, 192 N.Y.S. 2d 378, 380 (Sullivan Co. 1959); where it was held that merely

---

therefore such services are not intended to be covered within the scope of your group insurance policy.

"However, because of the special circumstances involved here, we are agreeable to allowing benefits on the charges submitted as an exception and with the understanding that no further exceptions will be made under any circumstances for private duty nursing service in the home except that performed by and requiring the special knowledge and skills of a registered nurse. . . ." See Moskowitz, supra, p. 18.

because licensed practical nurses were graduates of a school of training for practical nurses and were licensed or registered as practical nurses, charges for their services were covered under the policy provision providing coverage for "graduate registered nurses."

We are likewise unable to accept the strained and overextended reasoning of this lower New York decision, for to do so would be to ignore the glaring Pennsylvania statutory differences between the registered and licensed practical nurse and the plain and ordinary meaning of these terms. As indicated supra, if Equitable had intended coverage for both the registered and licensed practical nurse, it simply would have mentioned both kinds of nurses in the policy or neither, providing coverage for private duty nursing services in general.

Nor do we find merit in Saslaff's argument that the holding in another older New York trial court case: Shapiro v. Aetna Insurance Co., 33 Misc. 2d 576, 226 N.Y.S. 2d 131 (Nassau Co., 1962); is controlling in the instant matter. There, the court ruled that the policy provision providing coverage for "professional nursing services" included services performed by a licensed practical nurse on the theory that licensed practical nurses are professionals in the sense that they are skilled and knowledgeable in their calling and perform their services as their livelihood as opposed to an unskilled and unlicensed individual rendering gratuitous assistance to a patient.

In our view, Shapiro is totally inapposite to the instant case for the policy provision applicable here makes no mention of the word "professional," but limits coverage to "charges made by a Registered Nurse for private duty nursing service." Moreover, as heretofore indicated, under the Practical Nurse

Law, supra, section 652, the practice of practical nursing is clearly excluded from professional nursing in light of the fact that a practical nurse is permitted to perform only selected nursing acts *under the direction of a licensed professional nurse (or licensed physician or licensed dentist) which do not require the specialized skill, judgment and knowledge required in professional nursing.*

To say that licensed practical nurses are professional nurses merely because they are trained in their field and perform nursing services for a living is, in our view, to again ignore the plain and ordinary meaning of the language in the aforementioned statute.

Furthermore, we find no legal basis or acceptable rationalization either in Saslaff's contention that the policy is "a bona-fide adhesive contract as the employee has absolutely no say in the terms of the policy but accepts it as part of an inducement offer by employer in employment with that firm," or in her argument that Equitable has premised its case on the affirmative defense of an "exclusion" *in the policy* which Equitable not only has the burden to establish, but also prove that she (Saslaff) was aware of said exclusion and explained the effect thereof, which proofs Equitable has failed to meet.

Addressing ourselves first to the issue of whether or not the policy is an adhesive contract, it is significant to observe that Saslaff did not individually negotiate the terms of the policy with Equitable (in which case it might conceivably be argued that there was an inequality of bargaining power), but rather it was Merrill Lynch (clearly on an equal footing with Equitable) which, either on its own volition or upon compulsion from a union representing its employes, negotiated said health insur-

ance contract with Equitable on behalf of its employes.

Moreover, since Saslaff did not personally incur any expense for said medical benefits, as Merrill Lynch absorbed the entire cost of the health insurance premium (as so indicated on page 5 of the aforesaid booklet under "Your Comprehensive Health Insurance Plan"), and further since the overall medical coverage provided was quite generous and comprehensive, we fail to perceive how said policy could logically be characterized as an adhesive contract.

Indeed, in our view, the salary offered by Merrill, Lynch to Saslaff was the real inducement for her services and not the health insurance package which was merely a "fringe" or additional benefit gratuitously provided by Merrill Lynch to its employes. Lastly, even were we to consider the policy as a contract of adhesion, its only effect would be to strictly construe the policy against Equitable if the intent of the parties, as determined by the policy language itself, was obscure and unclear, and as heretofore indicated, we have found no such ambiguity. See Hodgins v. American Mutual Liability Ins. Co., 261 F. Supp. 129 (E.D. Pa. 1966).

Turning now to plaintiff's final argument, we believe that Saslaff has erred in her assumption that Equitable's defense is premised upon an exclusion *within the policy*. There is simply no such exclusionary clause or language in the policy denying coverage for services performed by licensed practical nurses. Instead, the exclusion of licensed practical nurses is premised on the fact that the affirmative clause providing coverage for private duty registered nurses is not broad enough to encompass within its scope the services of licensed practical nurses. In our view, when an insurance

contract provides coverage for one item, it is not mandatory to mention by name every other particular item for which coverage is not provided and we conclude that since the policy here is silent as to any nursing services other than those rendered by registered nurses, Saslaff was therefore adequately and unequivocally informed that services performed by licensed practical nurses were excluded from coverage.

While we are sympathetic to Saslaff's injuries and are cognizant that the result we now reach might appear, at first blush, to be rather harsh, we nevertheless should not and will not ignore what was so aptly and pointedly stated in Taylor v. Phoenix Mutual Life Ins. Co., 453 F. Supp. 372, 380 (E.D. Pa. 1978):

"'It is settled that where the language of the policy is clear and unambiguous *it cannot be construed to mean otherwise than what it says.*' (426 Pa. at 457, 233 A. 2d at 551).

"Other authorities agree. Volume 1 of Couch on Insurance 2d §15:37 states:

"'It is the duty of the courts in interpreting insurance contracts to enforce and carry out the contract which the parties have made, *without importing anything into the contract by construction contrary to its express terms, or the plain meaning of its terms, or attempting to make a better or different contract . . . If the terms of the contract are clear and express, the courts cannot extend or enlarge the contract by implication or construction so as to embrace a risk, object, or limitation distinct from that originally contemplated and not included in the express provisions.*' (1 Couch at 709-11)

"It is a recognized principle of law that: *'Insur-*

*ance companies have the same rights as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy or statutory provisions.'* (2 Couch on Insurance §19:64, at 204)

"There are a multitude of types of insurance, each with its own unique provisions, coverage rates and protected risks. The consumer is free to contract for the insurance he wants, but *he is not free to expect that because he has an insurance policy, he is protected against all risks.*

"Regrettably, the treatment at Moss was not covered by the policy here involved. The extended and persuasive arguments advanced by plaintiffs' counsel must fail in the face of the clear and precise provisions of the policy." (Emphasis supplied.)

Accordingly, in light of the foregoing discussion, we hold that the charges incurred by Saslaff for the private duty licensed practical nurses referred by Homemaker's are not covered under the policy provision providing coverage for "charges made by a Registered Nurse for private duty nursing service" and we therefore find a verdict in favor of Equitable and against Saslaff.