**AMERICAN TITLE INSURANCE COMPANY, a Florida Corporation, Plaintiff–Appellant,**

v.

**LACELAW CORPORATION, doing business as Charter Title, a Nevada Corp.; Crowell, Crowell, Crowell & Susich, Ltd., a Nevada Corp.; William Crowell, Jr., Defendants–Appellees.**

No. 87–2456.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1988.

Decided Nov. 9, 1988.

Douglas K. Fermoile, Reno, Nev., for plaintiff-appellant.

James M. Walsh, Henderson & Nelson, Reno, Nev., for defendants-appellees.

Before PREGERSON, BOOCHEVER and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

Plaintiff, American Title Insurance Company (American) appeals the district court's judgment in favor of defendant Lacelaw, dba Charter Title, (Charter). At the conclusion of a bench trial the district court found that American failed to prove by a preponderance of the evidence that Charter breached its agency agreement by relying on a Trustee's Sale Guarantee (TSG) as a basis for title. In its trial brief, Charter's attorneys stated that "Charter had used an earlier Trustee's Sale Guarantee as a starter." American claims the district court erred by not treating this statement as a binding judicial admission. American also claims that the evidence clearly showed that Charter had used a TSG in violation of its agency agreement. We affirm.

## FACTS

American, a Florida corporation, is a title insurance company licensed to do business in Nevada. Charter is a Nevada title and escrow company. In 1980, American and Charter entered into a title agency agreement allowing Charter to sell American policies in exchange for payment of a percentage of its escrow fees.

American bore primary responsibility for any loss, but Charter had to pay the first $5,000 loss per policy regardless of the cause of the loss. According to the agency agreement, Charter would be liable for the entire loss if it breached the agreement, which included local bulletins from American, or intentionally or wilfully departed from ordinary industry practice. It is not disputed, however, that Charter would not be liable for the entire loss if Charter used a prior policy as a starting point, or negligently missed an encumbrance on title when conducting a full title search.

Local bulletin number one established guidelines stating when a prior *policy* could be used as the basis for a title search. The local bulletin authorized American agents to use a prior policy when insuring nonresidential property "not exceeding $1,000,000, and the amount of the new policy should not exceed the prior policy by more than 200%." Local bulletin number one also provided:

> An interim title insurance binder, commitment, preliminary report of title or a similar document of American Title or any other company *should never be used as a basis of title.*

(emphasis added).

Charter issued an American Title Insurance Policy on property purchased by Eldon E. and Sherry B. Nygaard. The property was encumbered by a June 3, 1983 Deed of Trust in favor of John Titus for $34,000. The policy issued by Charter did not list the Titus Deed of Trust as an exception. At the time of the sale the Titus Deed of Trust was in default. When Titus commenced foreclosure proceedings on his Deed of Trust, American paid Titus $37,370.23 in order to establish the Nygaard's title as insured. Pursuant to the agency agreement, Charter paid American the first $5,000 of the title loss.

At trial, American claimed that Charter breached the title agency agreement and local bulletin by basing the Nygaards' title policy on a 1984 TSG, a limited title document and not a policy as required by the local bulletin. Charter denied this allegation in its answer. Charter stated in its

trial brief however, "In researching the title to the subject property, Charter had used an earlier Trustee's Sale Guarantee as a 'starter' ".

American did not enter this statement into evidence at trial, nor did it object to Charter's presentation of evidence that contradicted this statement. In its motion for a new judgment, American first argued that Charter's trial brief statement constituted a binding admission. The district court found that a TSG was similar to an interim title insurance binder and committment within the meaning and prohibition of local bulletin number one, but despite the statement in Charter's trial brief, found that the search started with an earlier title policy.

## DISCUSSION

### I. JUDICIAL ADMISSION

American claims that the district court failed to apply the law of judicial admissions to the following statement contained in Charter's trial brief:

> In researching the title to the subject property, Charter had used an earlier Trustee's Sale Guarantee as a "starter." The use of such starters is common practice within the industry. It amounts to using the title search associated with an earlier policy or similar document issued on the same piece of property, and then searching title forward from that date. In using this procedure, the Titus Deed of Trust was not found.

■ Because federal jurisdiction is based on diversity of citizenship, this court must apply the substantive law of Nevada. *See Interform Co. v. Mitchell*, 575 F.2d 1270, 1274 (9th Cir.1978). The admissability of evidence, however, is generally a procedural matter governed by the Federal Rules of Evidence. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2405 (1971). "[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Ferguson v. Neighborhood Housing Services.*, 780 F.2d

549, 551 (6th Cir.1986) (citations omitted). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *See White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson*, 25 B.R. at 509.

American argues statements contained in a trial brief are judicial admissions. A statement in a complaint, answer or pretrial order is a judicial admission, as is a failure in an answer to deny an allegation. *See, e.g., Smith v. Chapman*, 436 F.Supp. 58, 62 (W.D.Tex.1977), *aff'd*, 614 F.2d 968 (5th Cir.1980); *White*, 720 F.2d at 1396. This court has never decided whether statements of fact contained in briefs or other memoranda constitute judicial admissions.

For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit. *United States v. One Heckler–Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir.1980); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2723, pp. 64–66 (1983) (admissions in opponent's brief can be used to determine there is no genuine issue of fact, since they are functionally equivalent to "admissions on file"). Nevertheless, one court has concluded that inadvertent statements of fact made by counsel in briefs or memoranda should not be conclusively binding on the client in a summary judgment motion. *Hub Floral Corp. v. Royal Brass Corp.*, 454 F.2d 1226, 1228–29 (2d Cir.1972). The court held that a statement made by counsel in a memorandum of law "did not rise to the level of a 'judicial admission.'" *Id.* at 1228.

■ The Tenth Circuit holds that briefs are not pleadings or part of the record, and statements in briefs may be considered admissions in the court's discretion. *See Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885, 906 (10th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980);

*Lockert v. Faulkner,* 574 F.Supp. 606, 609 n. 3 (N.D.Ind.1983). We agree and hold that statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court.

■ In this case the district court did not abuse its discretion in refusing to treat the statement as a binding judicial admission. American did not introduce the statement into evidence or object to the introduction of contradictory testimony.[1] The first time American clearly raised this question was in its motion for a new judgment.

Normally, failure to contend that an opposing party's admission barred entry of conflicting evidence is a waiver of the argument that the issue was conclusively settled. *See White,* 720 F.2d at 1396; *Shell v. Parrish,* 448 F.2d 528, 530 (6th Cir.1971) (Superseded pleading must be offered into evidence for opponent to use admission therein); *see also Stacy v. Aetna Casualty & Sur. Co.,* 484 F.2d 289, 293–94 (5th Cir. 1973).

American claims that Charter's position at trial was not inconsistent with the alleged admission. Two witnesses on behalf of Charter testified, however, that a TSG was not the basis for title. James Lyon, a Charter representative, testified that a 1980 American policy was the basis for title. Linda Frink, the former president of Charter, testified she did not believe a TSG was used.

This testimony clearly contradicts Charter's alleged admission in its trial brief. American did not oppose the introduction of this evidence or offer the admission into evidence. Instead, American waited and raised this issue for the first time in its motion for a new judgment. The district court did not abuse its discretion by refusing to treat the statement as a binding judicial admission at that stage in the proceedings.

## II. THE DISTRICT COURT'S FINDINGS OF FACT

■ The district court found that American failed to prove that Charter's search started with the TSG. American claims that the overwhelming evidence at trial showed that a TSG had been used as the basis of title. We review a lower court's findings of fact under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *see also Allen v. Steele,* 759 F.2d 1469, 1470 (9th Cir.1985) (citing *Anderson v. City of Bessemer,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). An appellate court must accept the lower court's findings of fact unless upon review the appellate court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Johnson v. United States Postal Service,* 756 F.2d 1461, 1464 (9th Cir.1985) (citing *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407, 412 (9th Cir.1981)). Due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.,* (citing *Sutton,* 646 F.2d at 411).

American had the burden of proving that Charter relied solely on a TSG as the starting point of its title search. *Humphrey v. Sagouspe,* 50 Nev. 157, 254 P. 1074, 1076 (1927) (Burden of proof was on the buyer claiming breach of contract); *see also Continental Casualty Co. v. Summerfield,* 87 Nev. 127, 131, 482 P.2d 308, 310 (1971). While there was conflicting evidence whether Charter used the TSG as a starter, James Lyon testified that the Charter employee commenced the search with a title policy issued prior to the 1984 TSG. Moreover, Linda Frink, former president of Charter, testified at least one basis for the search was a prior title policy.

The trial court did not clearly err in finding that American failed to meet its burden of proof that the search started with the TSG.

The judgment is AFFIRMED.

---

**1.** American contended it raised this question at trial during the cross-examination of the former president of Charter. The transcript, however, clearly demonstrates that American merely alluded to this statement, but did not introduce it into evidence.