**HUB FLORAL CORPORATION,**
Plaintiff-Appellant,

v.

**ROYAL BRASS CORPORATION and**
Jacob Weinberg, Defendants-
Appellees,
and
**ETS Tissot & Cie, Defendant.**

No. 394, Docket 71–1930.

United States Court of Appeals,
Second Circuit.

Argued Jan. 4, 1972.

Decided Jan. 24, 1972.

Lawrence Dittelman, New York City (Weil, Gotshal & Manges; Michael K. Stanton, New York City, on the brief), for plaintiff-appellant.

Michael J. Striker, New York City, for defendants-appellees.

Before HAYS, MANSFIELD and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

In this action for infringement of an unpublished copyrighted work of art known as an "Octagonal Planter" pursuant to § 12 of the United States Copyright Act ("the Act"), 17 U.S.C. § 12, the district court granted partial summary judgment in favor of defendants, dismissing certain claims of the complaint on the ground that plaintiff, Hub Floral Corporation ("Hub") had failed to comply with § 13 of the Act, 17 U.S.C. § 13 (requiring deposit of copies of a work and registration with the Register of Copyrights where there has been a publication). Pursuant to Rule 54(b), F.R.Civ.P., the court directed that judgment be entered as to the dismissed claims, from which Hub appealed. We reverse.

For purposes of this appeal certain facts may be taken as true. In November 1969 Hub, a manufacturer, importer and wholesale distributor of flower pots, artificial flowers and related items, designed a unique octagonal planter, which is a stylized container (sometimes called a cache pot) in which plants are grown or placed for decorative purposes. The planters were to be manufactured for Hub by a French concern, ETS Tissot & Cie ("Tissot"), pursuant to an agreement calling for delivery of samples in

January 1970. Samples were received as scheduled and Hub thereupon, after placing an initial order with Tissot for 2,260 dozen planters, distributed 60 samples to its salesmen for use in booking orders from its customers and inserted photographs of the planter in its 1970 catalog.

In the summer of 1970 Tissot, apparently seeing an opportunity to reap a more profitable harvest from seed planted elsewhere, breached its contract with Hub, refused to deliver the planters ordered by Hub, and commenced shipment of identical planters to defendant Royal Brass Corporation ("Royal"), Hub's competitor, which is engaged in selling them in the United States. On August 24, 1970, Hub filed with the Register of Copyrights in Washington, D.C., an application for an exclusive copyright of the octagonal planter as an unpublished original work of art. Certification of registration was thereafter issued to Hub by the Copyright Office.

On January 20, 1971, Hub filed its complaint containing eight claims against Royal, Jacob Weinberg, its principal officer and stockholder, and Tissot, charging copyright infringement and unfair competition and seeking $1 million damages and injunctive relief.[1] Simultaneously Hub sought a preliminary injunction, which was denied. Royal and Weinberg cross-moved for partial summary judgment dismissing the copyright infringement claims (Fifth, Seventh, and Eighth) on the ground that Hub had failed to deposit copies of the planter or register with the Register of Copyrights in accordance with §§ 12 and 13 of the Copyright Act. Section 12 permits the registration of "Works not reproduced for sale" by deposit of a photograph or other identifying reproduction of a work of art, but provides that the privilege of registration shall not exempt the proprietor from deposit of copies under § 13 "where the work is later reproduced in copies for sale."[2] Section

---

1. Although Royal and Weinberg were served, jurisdiction was not obtained over Tissot.

2. "§ 12. *Works not reproduced for sale*
    "Copyright may also be had of the works of an author, of which copies are

13 provides that once there has been "publication" of a work with notice of copyright as provided in § 10, copies of the work must be deposited with the Register and that no action for infringement may be instituted until such deposit of copies and registration of the published work shall have been made.[3]

Disposition of the cross-motion for summary judgment turned upon whether there had been a publication of Hub's work by reproduction of copies for sale, which would require a new registration and deposit as a condition precedent to the maintenance of an infringement suit after such publication. Nimmer, Copyright § 93.2, at p. 353. The motion was based upon a statement made by Hub's counsel in a memorandum of law filed on March 16, 1971, in support of its application for preliminary injunctive relief, which stated that Hub "has been selling its octagonal planter under its copyright for the past several months." [4] However, in a reply affidavit dated May 14, 1971, Hub's Treasurer, who had personal knowledge of the facts, swears that no Octagonal Planters had yet been sold by it due to Tissot's failure to deliver any except the samples, and that its counsel's contrary assertion in the legal memorandum was an inadvertent misstatement.

■ Defendants' contention that the inadvertent statement of Hub's counsel was conclusively binding on Hub must be rejected. The statement did not rise to the level of a "judicial admission."

---

not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition; of a title and description, with one print taken from each scene or act, if the work be a motion-picture photoplay; of a photographic print if the work be a photograph; of a title and description, with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay; or of a photograph or other identifying reproduction thereof, if it be a work of art or a plastic work or drawing. But the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies, under sections 13 and 14 of this title, where the work is later reproduced in copies for sale."

3. "§ 13. *Deposit of copies after publication; action or proceeding for infringement*

"After copyright has been secured by publication of the work with the notice of copyright as provided in section 10 of this title, there shall be promptly deposited in the Copyright Office or in the mail addressed to the Register of Copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, or if the work is by an author who is a citizen or subject of a foreign state or nation and has been published in a foreign country, one complete copy of the best edition then published in such foreign country, which copies or copy, if the work be a book or periodical, shall have been produced in accordance with the manufacturing provisions specified in section 16 of this title; or if such work be a contribution to a periodical, for which contribution special registration is requested, one copy of the issue or issues containing such contribution; or if the work belongs to a class specified in subsections (g), (h), (i) or (k) of section 5 of this title, and if the Register of Copyrights determines that it is impracticable to deposit copies because of their size, weight, fragility, or monetary value he may permit the deposit of photographs or other identifying reproductions in lieu of copies of the work as published under such rules and regulations as he may prescribe with the approval of the Librarian of Congress; or if the work is not reproduced in copies for sale there shall be deposited the copy, print, photograph, or other identifying reproduction provided by section 12 of this title, such copies or copy, print, photograph, or other reproduction to be accompanied in each case by a claim of copyright. No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with."

4. Based on this statement Judge Bruchhausen granted partial summary judgment, stating "There have been reproductions of this planter together with subsequent sales."

See Taylor v. The Allis-Chalmers Mfg. Co., 320 F.Supp. 1381, 1385 (E.D.Pa. 1969), affd. per curiam, 436 F.2d 416 (3d Cir. 1970). At most it amounted to a "quasi-admission," see 4 Wigmore, Evidence §§ 1058–59; 9 *Id.* §§ 2588–90 (3d ed. 1940), which was corrected by the affidavit of Hub's officer having personal knowledge of the facts. Upon such a record it cannot be said that there is "no genuine issue as to any material fact", Rule 56(c), F.R.Civ.P., or that the facts "appear without substantial controversy", Rule 56(d), F.R.Civ. P., which must be shown before summary judgment will be granted.

■ We also must reject defendants' further contention that Hub's use of photographs and samples of the planter to obtain orders amounted to a publication of the work requiring compliance with § 13 of the Copyright Act. It has long been settled that the taking of orders through employment of samples, catalogs, or advertisements of a work does not amount to publication of the work. Rushton v. Vitale, 218 F.2d 434, 436 (2d Cir. 1955) (photos in trade journals); Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 105 (2d Cir. 1951) (catalogs); Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159, 163 (2d Cir. 1927) (samples); Falk v. Gast Lithograph & Engraving Co., 54 F. 890, 893 (2d Cir. 1893) (photographs); Basevi v. Edward O'Toole Co., 26 F.Supp. 41, 49 (S.D.N.Y.1939).[5]

■■ There can be no publication of the type referred to in § 13 of the Act until the work has been "reproduced in copies for sale", see 17 U.S.C. § 12; 37 C.F.R. § 202.2(a) (1), former Copyright Office Rules 19 and 23 as cited in Patterson v. Century Productions, 93 F.2d 489, 492 (2d Cir. 1937). Here the samples, although used for the purpose of taking orders from dealers, were not sold, nor had other reproductions yet been produced for sale or made available to the public. Since Hub was not in a position to commence realizing the benefits of its unique design and the public had not been provided with reproductions, there was no publication. See Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366, 1368 (S.D.N.Y.), affd. on opinion below, 415 F.2d 1007 (2d Cir. 1969); Nimmer, Copyright § 49 at 194–96, 207 (1971).

Although Judge Bruchhausen stated that his dismissal of the aforementioned claims was "without prejudice to plaintiff to correct the defect to be entitled to commence the action" his decision, if construed as holding that Hub's use of uncopyrighted samples to obtain orders amounted to a publication, would render Hub vulnerable to the claim that it had lost its copyright protection by offering or selling reproductions which did not bear the notice of copyright required by § 10 of the Act.[6] Accordingly, the judgment of the district court is reversed.

---

5. Statements apparently to the contrary in Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776, 784 (S.D. N.Y.1968), amount to dictum, the decision being squarely based on lack of creativity or originality, and were made without reference to any of the long line of cases applying the established rule in this Circuit. Moreover it is unclear from that decision whether there had been a sale of specific items to plaintiff's customers, which, of course, would constitute a publication.

6. "§ 10. *Publication of work with notice*
"Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title."