**E. MISHAN & SONS, INC., Plaintiff,**

v.

**MARYCANA, INC., and Mary Sullivan, Defendants,**

**and**

**Edward I. Mishan, Additional Defendant on the Counterclaim.**

**No. 85 Civ. 7429 (PNL).**

United States District Court, S.D. New York.

June 10, 1987.

Wyatt, Gerber, Shoup, Scobey & Badie, New York City (Gerard F. Dunne, Bruce N. Proctor, of counsel), for plaintiff.

Parker Auspitz Neesemann & Delehanty, New York City (Kim J. Landsman, of counsel), for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action arising under the copyright laws of the United States, the principal questions at issue being whether Marycana, Inc., formerly Mary's Magnets Inc. (hereafter "Mary's"), owns a valid copyright in a calico and eyelet bordered kitchen magnet, and if so, whether its copyright was violated by plaintiff E. Mishan & Sons Inc. ("Mishan") by Mishan's distribution of similar kitchen magnets which were copied (with variations) from Mary's. On the stipulation of the parties, trial was conducted on a submitted record. Mishan, which instituted the action seeking a declaration of nonliability, contends that the Mary's copyright is invalid because the Mary's work was derivative and not original, because Mary's omitted copyright notices on its magnets, and misstated the date of first use on the notices it did affix. In addition, Mishan contends that even if Mary's copyright is valid, its own magnets do not infringe Mary's copyright because Mishan's magnets are themselves original and sufficiently different from Mary's, and because Mishan was misled by absence of copyright notice on Mary's magnets.

*Facts*

The facts are as follows. In the spring of 1981 Mary Margaret Sullivan, doing business as "Mary's Magnets," created and began to produce an Americana style calico and lace kitchen magnet. It consisted of a square white card bearing a homey kitchen verse or saying written in calligraphy, with an imitation flower glued on its upper left-hand corner—pasted in the center of a cardboard square covered with calico or gingham—surrounded by a ruffled fringe of eyelet lace—with a magnet glued to the back. The sayings on her magnets over time have included, "Warning: Complaints to the cook can be hazardous to your health!"; "Kitchen closed due to illness: I'm sick of cooking!"; "Diet on! [and upside down] Diet off!"; "Don't lose your temper here, we don't have time to help you find it!"; "If a mother's place is in the home, why am I always in the car?!" and "A mother is a special lifelong friend!"

Initially she showed her magnets in local craft fairs and small shops around San Jose, California. The magnets showed in 1981 did not display a copyright notice. In 1982 when the volume of her sales began to increase, she added a copyright notice printed on a square white paper glued under the magnet on the backside which said, "Mary's Magnets © 1982." Sales increased very substantially during the next years, going from approximately 1,000 in 1981 to 276,000 in 1984 and a slightly smaller number in 1985. In 1985, the enterprise was incorporated as Mary's Magnets, Inc. Subsequently, the name of the corporation was changed to Marycana, Inc., a name designed to suggest the Americana motif of Mary's products.

Mary and her husband-and-business-partner Tom testified that at all times after the initial period, all the magnets which they produced carried a copyright notice on the back. The notices were changed slightly from time to time. In 1984 the notice was changed to read "Mary's Magnets™, Made in San Jose, CA © 1984." Later in 1985 the notice read "Mary's Magnets ™, Made in San Jose, CA © 1985 Marycana, Inc." (The Sullivans being without advice of counsel at that point believed that the date on the copyright notice should refer to the date of the notice rather than the date of first use.)

Mishan entered the picture in January of 1984. Mishan is a family company which has been in business over 40 years, run at the time by two brothers Isaac and Abe Mishan and their two sons Eddie I. and Eddie A. Mishan. Mishan was in the business of selling novelty items, mostly manufactured for it in the Orient. Mishan would offer 400–500 new items per year, primarily through catalogues and trade shows. Its buyers, Eddie I. and Eddie A. were constantly in search of items that might be suitable for Mishan to offer for sale. In the course of their searches, they would buy many hundreds of items each year for possible copying or modification. Eddie A., attending a trade show in Las Vegas in January 1984, noticed decorative magnets exhibited on a display pole in a gift shop in the lobby of his hotel. Among them were a number of Mary's magnets. He bought several magnets, including at least one calico magnet of Mary's. Eddie A. testified that the magnet he bought in Las Vegas had no copyright notice or statement of origin on it. He decided Mary's magnet would be a good item for Mishan to produce to sell, in boxed sets of four, each of the four magnets having a different saying written on it. He determined that Mishan would use material printed in checkered gingham instead of the flowered calico of the Mary's sample. He testified that he wanted to incorporate changes to make Mishan's magnet an original work eligible for registration.

Eddie A. called in Fred Hollinger, a commercial artist who regularly did work for Mishan, to give him a number of assignments. One of the assignments was to create four cards each with a different calligraphic saying, to be glued to the center of Mishan's version of the magnets. He also instructed Hollinger to design artwork for a box to contain a set of four magnets. Hollinger performed those two tasks and billed Mishan $60.00 for each of them. The four square cards designed by Hollinger said "Please kiss the cook!" "You

are what you eat!" "The early bird makes his own breakfast!" and "God bless this mess!" The first and second included respectively a drawing of lips and of an ice cream sundae, while the third and fourth had no additional art work. These were different sayings from those used by Mary's. Hollinger did the lettering in a calligraphy quite similar to Mary's.

Eddie A. and Eddie I. then traveled to Taiwan to meet with their agent who would arrange for the manufacture of various Mishan merchandise. They gave the agent the sample Mary's magnet together with Fred Hollinger's four cards with sayings. The Taiwan agent was instructed to copy the Mary's magnet, but with certain changes. The magnets were to be made as cheaply as possible. While on Mary's magnets the eyelet is gathered at its inner circumference with the result that the material ruffles and presents a somewhat rounded silhouette, Mishan instructed its agent to glue the material flat, with tucks only at the four corners, so as to save labor and material. This resulted in the material lying flatter and presenting a more square, less rounded, silhouette. Also, the agent was instructed to use material printed in a checkered gingham motif, rather than flowered calico. The sample Mary's magnet was given to the agent to permit the manufacturer to take it apart and copy it, except as to the variations mentioned above. A week later, the Mishans returned to inspect the manufacturer's sample. They approved the sample and ordered boxes for sets of four based on Hollinger's box drawing. When the merchandise was received in the United States in the summer of 1984 Mishan began to sell the magnets as part of its extensive line of novelty items. On September 7, 1984, Mishan filed a copyright registration for its magnets claiming first publication on July 15, 1984. (DX 60.) On the portion of the application which asks for identification of "any preexisting work ... that this work is based on or incorporates" and then calls for a statement of what "has been added to this work," Mishan wrote "N/A," making no mention of the Las Vegas sample.

In April of 1985, Mary Sullivan noticed a picture of the Mishan magnets in a "Hanover House" mail order catalogue, looking very like her own. Mary's then hired attorneys, sent a cease and desist letter to Hanover House, and caused the registration of its copyright. (Mary's copyright registration deposited a photograph depicting one of her magnets, bordered in flowered calico.)

Upon receipt of Mary's cease and desist letter, Hanover House inquired of Mishan as to the basis of the claim and was assured by Mishan that Mishan itself owned a valid registered copyright for its magnets and that the claim was without basis. Mary's sent a cease and desist letter to Mishan on September 11, 1985 stating that Mary's would bring action in California if it did not hear from Mishan. Mishan thereupon instituted this action for declaratory relief and other remedies. Mary's counterclaimed.

*Discussion*

A. *The Validity of Mary's Copyright*

 1. *The Originality of Mary's creation.* Mishan contends Mary's copyright is not valid by reason of lack of originality. It contends Mary's magnet merely recreates the long familiar, commonly available, Americana-style sampler, using commercially available materials in an unoriginal way, adding a magnet at the back.

The reservation of copyright protection to "original works of authorship," § 102, Copyright Act of 1976, 17 U.S.C. § 102 (1982), requires only independent creation, not novelty. *See Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir. 1980); *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49 (2d Cir.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed.2d 1392 (1936) (L. Hand, J.); 1 *Nimmer on Copyright* § 2.01, 2.01[A–B]. The work must owe its creation to independent authorship rather than copying.

The fact that Mary's magnets were made with commercially available materials does not negate their independent authorship. Independent authorship can of course arise

from the assemblage of the materials. Although Mishan proferred testimony through an expert witness which showed that samplers in Americana-style are long-familiar items, none of the examples introduced were of such similarity to Mary's as to suggest her works were copied rather than independently created. Nor did the testimony of Mishan's expert Ruth Rosenthal suggest that Mary's magnet was a copy of preexisting examples. Her testimony was only to the effect that objects of similar style were familiar, which in no way rebuts independent authorship.

Mishan has failed to show that Mary's work lacked independent authorship. Although there is no doubt that Mary Sullivan's creation did not have a high degree of novelty and adhered to long-familiar stylistic elements, it was nonetheless an independent act of authorship and was entitled to copyright registration and enforcement.

2. *Omission of Copyright Notices.* Section 401 of the Act requires that "a notice of copyright ... shall be placed on all publicly distributed copies ... [consisting of] (1) the symbol © (the letter C in a circle), or the word 'Copyright' ... [or an abbreviation]; and (2) the year of first publication of the work ... and (3) the name of the owner...." Mishan contends Mary's copyright lapsed by reason of her failure to affix such required notices.

Section 405, however, dealing explicitly with the omission of notices, provides that the "omission ... does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies ... distributed to the public; or....

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies ... that are distributed to the public in the United States after the omission has been discovered....

Mary's concedes that its magnets sold in the first period of distribution in 1981 and early 1982 had no notice affixed. This omission was attributable only to ignorance of the legal requirement. The early distribution without notice amounted to only about 3,000 out of the 613,000 sold prior to trial submissions. Mary's evidence was that since it began affixing notices in 1982, all its magnets have borne a notice. Mishan's only contrary proof is the assertion of Eddie A. (supported by Eddie I. and Fred Hollinger) that the magnet purchased by him in Las Vegas in 1984 did not have a notice. (This magnet was given to Mishan's Taiwanese agent to be taken apart and copied; it has not been produced.)

Even assuming the accuracy of Eddie A.'s testimony, it shows only that Mary's effort to affix notices was not foolproof. The evidence nonetheless demonstrates that notice was omitted by Mary's "from no more than a relatively small number of copies...." Mary's copyright is not invalidated by such omission. *See Transgro, Inc. v. Ajac Transmission Parts Corp.,*. 768 F.2d 1001, 1019–20 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 827 (11th Cir.1982).

Mary's contends the validity of its copyright is also preserved by its having registered its copyright for the work within five years in accordance with § 405(a)(2). As to the requirement that it make "a reasonable effort ... to add notice to all copies ... that are distributed to the public ... after the omission has been discovered," Mary's points out that it could not practically find those previously distributed. Where the omission of notice was innocent and applied to a relatively small number and could not practically be cured by hunting down previously distributed copies, Mary's argument seems reasonable. *Cf. Shapiro & Son Bedspread Corp. v. Royal Mills Assoc.,* 764 F.2d 69, 74–75 (2d Cir. 1985). In view of my finding that there was no loss of copyright due to the small number of copies distributed without notice, I need not rule whether Mary's failure to add notices to those previously distributed deprives it of the benefit of § 405(a)(2).

3. *Dates Shown on the Notices.* As noted above, when Mary's and its predecessors prepared and changed the copyright notices they affixed to their magnets, the dates they placed on the notices were not the date of first publication as § 401(b)(2) specifies, but rather the dates the particular copyright notices were prepared. Thus the first notice prepared in 1982 bore the date 1982, and the revisions prepared in 1984 and 1985 bore those dates. This confusion was attributable to ignorance of what the statutes called for. Mishan contends these errors voided Mary's copyright.

Identification of the year is not required by § 401(b)(2) for notices affixed to a "pictorial, graphic, or sculptural work ... reproduced in or on ... any useful articles." A kitchen magnet is a device used for the posting of recipes, reminders and the like on the refrigerator. The sculptural design features "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101. ("Definitions: Pictorial, graphic and sculptural works.") *See Kieselstein-Cord v. Accessories by Pearl,* 632 F.2d 989 (2d Cir.1980). The affixing of Mary's artwork to the magnet brings the copyright within this provision, and excuses notice of the date of first publication. *See* 2 *Nimmer on Copyright* § 7.08[A][1]. At least where the error is innocent and is not done for a fraudulent purpose such as falsely asserting priority or improperly seeking to extend copyright duration, and where no prejudice results from the error, the printing of an erroneous date will have no more serious consequence than printing no date at all. *See First American Artificial Flowers, Inc. v. Joseph Markovits Inc.,* 342 F.Supp. 178 (S.D.N.Y.1972).

4. *Pictures in Brochure Without Notice.* Mishan's further argument that the publication of photographs of Mary's magnets in Mary's brochures, without copyright notice, put the magnets in the public domain. This argument fails for two reasons: First, publication of the photographs in the brochure was not distribution of copies of the sculptural work. *See Kamar Internat'l, Inc. v. Russ Berrie and Co.,* 657 F.2d 1059, 1061–62 (9th Cir.1981); *Hub Floral Corp. v. Royal Brass Corp.,* 454 F.2d 1226, 1229 (2d Cir.1972); *Foreign Car Parts, Inc. v. Auto World, Inc.,* 366 F.Supp. 977 (M.D.Pa.1973). Second, even if this were not the case, Mishan has not shown that the number of brochures distributed was sufficient to affect the "relatively small number of copies" distributed without notice.

## B. *Mishan's Infringement*

■ 1. *Substantial Similarity.* The Court finds as a matter of fact that Mishan purchased and copied an example of Mary's copyrighted magnet, making certain changes in the process. The only significant issue is whether Mishan's changes were of sufficient significance to defeat the contention that Mishan's work was substantially similar to Mary's. I find that they were not and that Mishan's copying was an infringement.

The instructions given by Mishan to its Taiwan agent for the production of its magnet provided for three changes: First, the Mishan magnets were to be made with Fred Hollinger's four cards, which carried different sayings (although of the same general type); second, the material surrounding the cards was to be of checkered gingham of different colors rather than flowered or dotted calico; third, the surrounding eyelet was to be tucked at the four corners rather than gathered all around. Otherwise, the agent was furnished the Mary's magnet to be copied. In carrying out the instruction, the Taiwan agent (or his manufacturer) made some insignificant changes of detail.[1] For example, the printed leaves on Mishan's flower stem are slightly thinner than Mary's. Mishan points out furthermore that there are occasional variations in Mary's magnets as to features that in Mishan's case are uniform. For example, Mary's uses sometimes white and sometimes beige cards; Mishan uses only white. Mary's

---

**1.** Fred Hollinger testified that his only contribution to the artwork was the design of the cards with sayings and the box. He did not design Mishan's magnets.

uses sometimes flowers with a single layer of petals, sometimes double, while Mishan always uses double. Mary's flower color sometimes complements and sometimes contrasts with the matting material, while Mishan's always contrasts. (As to these latter features, the evidence submitted does not clarify what is the case for either Mary's sample deposited with its copyright registration, or the Mary's sample which Mishan turned over to its Taiwan agent for copying.)

In my opinion the differences are far too trivial to avoid Mary's copyright. In overall effect, and in many details, the two objects are of such striking similarity that an average lay observer would expect or assume that one was a copy of the other (or that both were copies of a common source). *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986) (would average lay observer recognize the one as appropriated from the other?); *Warner Bros. Inc. v. American Broadcasting Cos. Inc.*, 654 F.2d 204, 208 (2d Cir.1981) (same); *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966) (same); The test for determining substantial similarity in the face of differences is not easily articulated. The issue is discussed at length at 3 *Nimmer on Copyright* § 13.03. *See also Warner Bros., Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231, 240-43 (2d Cir.1983) (*Warner v. ABC* II). Among the principles generally agreed in the abstract are that slight trivial similarities do not make an infringement. Nor will a taking of ideas (or of stylistic elements such as in this case, the Americana sampler style) constitute infringement unless the manner of expressing those ideas or elements also is taken. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90-91 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976); 17 U.S.C. § 102(b)(1982). On the other hand, one does not escape liability merely by pointing to dissimilarities, if in spite of them, sufficiently substantial similarity remains. *See Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir.1987); *Warner v. ABC* II, 720

F.2d at 241; *Sheldon v. Metro Goldwyn, Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed.2d 1392 (1936).

It was noted in *Warner v. ABC* II, 720 F.2d at 241, that especially with a pictorial or sculptural work which is perceived as an entirety, rather than sequentially in segments, differences of significant detail can produce very different overall perception in spite of the presence of importantly similar elements. The issue in such a case is to appraise the importance and significance of the similarities and the differences to determine whether the work as a whole is substantially similar.

In this case, I find the conclusion is clear. The changes made by Mishan are for the major part, and in overall effect, not significant. Taken as a whole, giving full credit to the effect of those changes, the Mishan magnet remains very substantially similar to Mary's. It looks like a cheap copy of Mary's with a few changes made and a different saying, which is exactly what it is. Indeed the great similarity was acknowledged by Mishan's witnesses. *E.g.,* Eddie A. Mishan, Dep. pp. 96–98; Rosenthal Dep. pp. 32–33.

Mishan argues that Mary's claim seeks protection against "every country style magnet having any fabric, any artistic arrangement of lace and any homey verse" and that a judgment in Mary's favor would improperly protect "the idea or organization of the work, not the details of artistic expression properly protected by copyright." (Plaintiff's Reply Memorandum, p. 3.) The argument is not appropriate to these facts. Mary's copyright does not bar others from making Americana-sampler style magnets utilizing gingham, calico, eyelet and artificial flowers, even assuming they draw from the idea, theme or style of Mary's work. The works in the public domain shown by Mishan's expert Ruth Rosenthal as similar to Mary's, for example, could freely be made based on access to Mary's work without raising any question of infringement. Mishan, however, has gone further. It has explicitly copied those aspects of Mary's work that were the prod-

uct of its independent authorship, including what might be called the artistic details of Mary's work. Notwithstanding its change of certain details, this constitutes infringement.

For purposes of this ruling, I compare the Mishan checkered gingham magnets with Mary's flowered calico version deposited with its registration, rather than with Mary's checkered versions that might have been seen by Eddie A. in the Las Vegas shop. I assume without deciding that Mary's action may be maintained only to vindicate infringement of its work deposited with the registration. *Cf. Nimmer on Copyright* §§ 7.16[B][1], 7.17[A]. Assuming that Mishan's use of checkered gingham is to be counted as a difference rather than a similarity, it is nonetheless too insignificant in overall effect to overcome the very substantial similarity between the two works.

■ **2.** *Was Mishan Misled by Omission of Copyright Notice.* Although for the reasons stated above, Mary's omission of copyright notice did not void its copyright, an omission which misled Mishan to its prejudice could render its infringement "innocent" until such time as it received notice and thus affect its liability to damages. 17 U.S.C. § 405(b) (1982).

Neither side's testimony is overwhelmingly impressive on the question whether the Las Vegas magnet bore a copyright notice. Mary's offered rather conclusory testimony that after the initial period, all its magnets carried the notice. Recognizing that it is difficult to prove absence of omissions, there are various ways in which the proof could have been strengthened, including evidence of procedures followed to prevent the possibility of omission, evidence of inspection, etc.

Mishan offered the testimony of Eddie A., Eddie I. and Fred Hollinger that the Las Vegas sample bore no notice. I recognize that this is interested testimony and furthermore that it is somewhat impeached (at least as to Eddie A. and Eddie I.) by Mishan's failure to acknowledge on its application for registration the highly derivative nature of its work and its failure to

"[i]dentify any preexisting work ... that this work is based on or incorporates," as the form requires.

Mary's argues further that it has shown by reference to other litigations and claims that infringement is Mishan's method of doing business. I do not find that Mary's has succeeded in making out that contention. Considering the fact that Mishan offers 400–500 new items per year, the evidence of claims and suits against it is not particularly impressive, notwithstanding one rather egregious episode twelve years ago.

On balance and without great conviction, I am inclined to credit Mishan on this issue and conclude that until it received notification around June 5, 1985 of Mary's letter to Hanover House, its status was that of an innocent infringer under § 405(b), which may be liable for its profits attributable to the infringement, but not for actual or statutory damages under § 504.

### Relief

Mary's has shown entitlement to an injunction and to damages under §§ 502 and 504. It is entitled also to costs and a reasonable attorney's fee under § 505, especially in view of Mishan's unjustified conduct after receipt of notice of Mary's copyright claim. Mishan's complaint charging Mary's with operating a Racketeer Influenced Criminal Organization under 18 U.S.C. § 1962 is absurd and is of course dismissed. Its claim for a declaratory judgment of nonliability also is dismissed.

SO ORDERED.